**REPUBLIC INTERNATIONAL CORPORATION (formerly Republic International Engineers Corporation), a Delaware Corporation, Appellee,**

**v.**

**AMCO ENGINEERS, INC., a California Corporation, et al., Appellants.**

**No. 73–2459.**

United States Court of Appeals, Ninth Circuit.

April 25, 1975.

---

William McD. Miller, Los Angeles, Cal. (argued), for appellants.

Richard B. Cutler, Los Angeles, Cal. (argued), for appellee.

## OPINION

Before CHAMBERS and SNEED, Circuit Judges, and THOMPSON,* District Judge.

SNEED, Circuit Judge:

This is an appeal by defendant Ministry of Public Works, Republic of Uruguay ("Ministry"), from a default judgment in the sum of $428,904.86 entered in favor of appellee Republic International Corporation ("Republic"), a Delaware corporation, for damages for breach of contract. Appellee filed its complaint against appellant and other defendants on June 1, 1972, alleging federal jurisdiction on the ground of diversity of citizenship, 28 U.S.C. § 1332(a)(2). The trial court denied Ministry's motions to dismiss and to quash service of summons pursuant to F.R.Civ.P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) and further denied its motion to certify an interlocutory appeal from the order of denial. Thereafter, the Ministry filed a document of withdrawal from the suit. Entry of the default judgment followed, and Ministry filed this appeal.

Appellant Ministry raises several specifications of error. Our disposition of this appeal requires that we reach only the following contentions: First, appellant argues that the court below erred in refusing to grant its motion to quash service of process on the ground that it

was never properly served. Appellant further claims that the court erred in refusing to grant its motion to dismiss the action on the ground that the court lacked personal jurisdiction over appellant. Finally, appellant argues that even if the court had personal jurisdiction, it should have dismissed the action since each contract contained a choice-of-forum clause which provided that suit must be brought in a Uruguayan court. For the reasons which follow, we reverse and remand.

### I.

#### Facts

Republic's complaint seeks damages for the alleged breach of two contracts for the widening and improvement of two highways in Uruguay, known, respectively, as Route 5 and Route 26. The two contracts—along with a third, not involved here, for maintenance of the highways—were awarded by the Ministry in 1963, after bidding, to Amco Engineers, Inc., a California corporation ("Amco"). The contracts, the material terms of which were substantially alike, ran originally for a term of thirty-six months from October 4, 1963, but were extended until March 4, 1970.

After the completion of some drafting and design work in Amco's Los Angeles office—to which Ministry engineers had been sent for five or six months during this period[1]—the construction work was undertaken in Uruguay. Pursuant to Uruguayan law, Amco had formed a Uruguayan corporation, Amco Engineers, Inc., S.A. ("Amco, S.A.") in order to perform work in the country on a continuing basis.

On June 30, 1966, in Los Angeles, Amco assigned its rights, duties and obligations under both contracts to appellee. Shortly afterward, the corporate charter of Amco was suspended. The facts as recounted by the two sides in their re-

---

* Honorable Gordon Thompson, Jr., United States District Judge, Southern District of California, sitting by designation.

1. According to Ministry, three engineers of the Ministry were sent to Los Angeles; according to Republic, the number was six.

spective briefs differ as to what transpired following the assignment. The parties agree that Ministry was notified of the assignment. At this time Ministry informed Republic of certain preconditions it was required to satisfy in order that it could obtain the requisite written consent of Ministry to the assignment. According to Ministry, satisfactory compliance on the part of Republic was not forthcoming, so that no approval, written or otherwise, was given to the assignment. According to Republic, it adequately fulfilled the conditions posited by Ministry and the latter at no time raised objections to the assignment of the contracts or the performance of the work by Republic.

In any event, the construction work on the highways continued through 1969 and appellant made monthly payments to Amco, S.A.[2] In 1969 two private citizens of Uruguay filed an action against Ãmco, S.A. in an Uruguayan court, and petitioned the court for an "embargo," an order directing a debtor of a defendant to deposit with the court all monies due and owing that defendant, similar to a writ of garnishment under California law. The embargo was issued to appellant on December 31, 1969 and appellant states that in February, 1970, it deposited with the court its payment for work performed in December. After the issuance of the embargo appellee petitioned the Uruguayan court to dissolve the embargo on the ground that it was a bona fide assignee of Amco's contracts with appellant, and that the latter had impliedly consented to the assignment. The court ruled against appellee, however, and that ruling was confirmed on appeal.

After several exchanges between the parties, appellant notified Amco, S.A. by telegram on February 13, 1970, that it would continue to deposit with the court accrued fees for road construction until it received a judicial order releasing the embargo. On March 3, 1970, appellee informed appellant by telegram that it was rescinding the contracts. Appellee later filed this action for breach.

## II.

### Service of Process

Two alternative procedures were employed to effect service of process upon appellant Ministry. The district court issued letters rogatory, which were delivered to the National Court of Financial and Administrative Matters of the Republic of Uruguay; the latter served the summons and complaint on appellant and, in accordance with its laws and procedure, made a return of summons to the district court. Also, by district court order, Moise Saporta was appointed to make service of process on appellant; he delivered the summons and complaint to the contractually-designated "special residence" of Ministry in Montevideo[3] and made a return of summons to the court.

We reject appellant's contention that service of process was invalid

---

**2.** According to Ministry, after the suspension of Amco's corporate charter, Republic caused to be formed a Delaware corporation under the name of Amco Engineers, Inc. This corporation then formed, in June, 1967, a Uruguayan subsidiary corporation called Amco Engineers, Inc., S.A. The two Uruguayan companies, one formed by Amco (California) and one formed by Amco (Delaware), both operated out of the same office in Montevideo. It is not clear which Amco, S.A. received Ministry's monthly payments.

**3.** Article 25 of each contract provides:

For the judicial or extrajudicial purposes called for in this contract, the parties establish their special residences in this city:

a) The GOVERNMENT at: Ministerio de Obras Publicas Avda.
18 de Julio 1112, piso 3

. . .

According to his affidavit, Saporta went to the above address and delivered the summons and complaint to "the Supervisor of the section designated and authorized by said co-defendants to receive all documents of any nature or kind whatsoever for said co-defendants and known as the 'MESA ENTRADA SECTION OF THE MINISTRY OF PUBLIC WORKS, REPUBLIC OF URUGUAY' . . . ."

and hold that service here was reasonably calculated to give actual notice. We note at the outset that in making a general appearance, appellant did not, as claimed by appellee, waive its right to assert the alleged defects in service. Special appearances to challenge jurisdiction are no longer required in federal courts. Dragor Shipping Corp. v. Union Tank Car Co., 378 F.2d 241, 243 n.2 (9th Cir. 1967); 2A Moore, Federal Practice ¶ 12.12.

While it may be argued that both methods of service utilized here were valid under Rule 4, F.R.C.P.,[4] we have concluded that its provisions do not apply to service upon a foreign government. We uphold service upon appellant, however, under the rule-making authority of the district court pursuant to Rule 83, F.R.C.P.[5] In so doing we follow the reasoning of the Second Circuit opinion in Petrol Shipping Corp. v. Kingdom of Greece, Ministry of Commerce, 360 F.2d 103 (2d Cir.), cert. denied, 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966). In that case the court held that the terms of Rule 4(d)(3) in particular—and Rule 4 in general—did not extend to service upon the defendant foreign governmental agency.[6] It then turned to Rule 83 and explained:

[W]hen there is no Federal Rule, and no local rule, the court may fashion

---

**4.** Rule 4(e) provides, in relevant part:

. . . Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons . . . upon a party not an inhabitant of or found with the state . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule.

There is in California a statute of the type referred to in Rule 4(e), viz., Cal.Code of Civ. Proc. § 413.10, which provides:

Except as otherwise provided by statute, a summons shall be served on a person:

(c) Outside the United States, as provided in this chapter or as directed by the court in which the action is pending, or, if the court before or after service finds that the service is reasonably calculated to give actual notice, as prescribed by the law of the place where the person is served or as directed by the foreign authority in response to a letter rogatory. (Emphasis supplied).

It should also be noted that Rule 4(i), F.R.C.P., provides:

(1) Manner. When the federal or state law referred to in subdivision (e) of this rule authorized service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: . . .
(B) as directed by the foreign authority in response to a letter rogatory, when service . . . is reasonably calculated to give actual notice; . . . or (E) as directed by order of the court. Service under (C) or (E) above may be made by any person who is not a party and is not less than 18 years of age or who is designated by order of the district court or by the foreign court. . .

(2) Return. Proof of service may be made as prescribed by subdivision (g) of this rule, or by the law of the foreign country, or by order of the court. . . .

Given the required provision for extraterritorial service in the California law, service upon appellant by means of letters rogatory appears to be consonant both with the terms of the California statute and with Rule 4(i)(1)(B); service by means of Saporta's delivery of the summons and complaint to the special residence of Ministry in Montevideo, pursuant to court order appears to be covered by both the California statute and Rule 4(i)(1)(E). Return of service was satisfactory in both instances.

However, to employ the Rule 4(e)-to-Code of Civ.Proc. § 413.10-to-Rule 4(i) approach would require that we decide whether Ministry is a "person" within the meaning of Cal.Code of Civ.Proc. § 413.10 see Renchard v. Humphrey & Harding, Inc., 59 F.R.D. 530, 531 (D.D.C. 1973). We prefer to avoid confronting this issue by holding that Rule 4 was not intended to provide a means of service upon a foreign government and that process was served properly under the authority of Rule 83.

**5.** Rule 83, F.R.C.P., provides:

Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the Supreme Court of the United States. In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules.

**6.** The court stated:

Rule 4(d)(3) is not a catch-all for categories of parties not otherwise considered in Rule 4.

one not inconsistent with the Federal Rules. Rule 83, *supra.* . . .

. . . [I]f neither service under Rule 4, or under a local rule was available here, and, for some reason, that part of Rule 83 authorizing *ad hoc* rules could not be used, then the court may fashion a rule outside the Federal Rules altogether, although this really amounts to the same thing as the *ad hoc* provisions of Rule 83. *Id.* 360 F.2d at 108.

The court then upheld service upon the defendant by ordinary mail addressed to its office within the state.

■ Such service clearly was consistent with a local rule of the district court.[7] In the present case, however, we are faced with a local rule which, as we view it, is inapplicable. This follows from the fact that the relevant local rule, Rule 5(a)(2), set forth in the margin,[8] speaks of service in diversity cases in terms of F.R.C.P. 4(d)(1) rather than in terms of "parallels" and "analogies." Our holding that Rule 4 is inapplicable to foreign governmental agencies renders local Rule 5(a)(2) also inapplicable.

■ It follows that here the district court was confronted with a situation "not provided for by rule" in which Rule 83 permits a district judge to fashion a procedure consistent with the federal rules. The action of the court below, in authorizing both the issuance of the letters rogatory to the Uruguayan court and the service by Saporta at the special residence of appellant was a proper exercise of its power to regulate its practice under Rule 83. Service was, in both instances, reasonably calculated to give actual notice. Thus we hold that service of process was valid and that appellant's motion to quash was properly denied.

## III.

### *Personal Jurisdiction*

■■ In discussing the amenability of the Ministry to suit in a federal court based on diversity, we recognize that the unanimous view of the circuits is that such amenability is determined by reference to the law of the state in which the federal court sits. 4 Wright & Miller, Federal Practice and Procedures: Civil § 1075. This is not altered by our holding that Rule 4 is not applicable to the service of process on an agency of a foreign government.[9] Thus, we must examine California's long-arm statute, California Code of Civil Procedure § 410.10, which provides:

---

The only entity covered in 4(d)(3) that is remotely like respondent is 'other unincorporated association which is subject to suit under a common name.' . . . The only question, then, is whether respondent is an association.

An association ought not to be defined to include an entity which lacks membership; respondent is essentially merely an agency of the Greek government. *Neither Rule 4(d)(3), nor any other part of Rule 4, provides for service on such a party.* 360 F.2d at 107. (Emphasis supplied).

**7.** Rule 15 of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York provides:

Whenever a procedural question arises which is not covered by the provisions of any statute of the United States, or of the Rules of Civil Procedure, or of the Rules of the United States District Courts for the Eastern and Southern Districts of New York, it shall be determined, if possible, by the parallels or analogies furnished by such stat-

utes and rules. If, however, no such parallels or analogies exist, then the procedure heretofore prevailing in courts of equity of the United States shall be applied, or in default thereof, in the discretion of the court, the procedure which shall then prevail in the Supreme Court or the Surrogates Court as the case may be of the State of New York may be applied.

**8.** In diversity cases commenced in this court, service of process shall be made in the manner set forth in F.R.Civ.P. 4(d)(1) rather than the manner prescribed by state law. . . .

**9.** As pointed out by Judge Friendly in Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1962) (en banc), Rule 4(d)(3) and (7) describe how service of process is to be made and does not establish a federal standard of amenability. The contrary view held by Judge Clark is set forth in his dissent in *Arrowsmith* and discussed fully in 4 Wright & Miller, Federal Practice and Procedure: Civil § 1075.

A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.

This is indeed a long arm. We have described it in this fashion. "The jurisdiction of the California courts is therefore coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." Threlkeld v. Tucker, 496 F.2d 1101, 1103 (9th Cir. 1974).

The Supreme Court has delineated the boundaries of permissible state jurisdiction over a non-resident defendant, stating: "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Moreover, according to the California Supreme Court:

> [U]nless the defendant's forum-related activity reaches such extensive or wide-ranging proportions as to make the defendant sufficiently "present" in the forum state to support jurisdiction over it concerning causes of action which are unrelated to that activity, the particular cause of action must arise out of or be connected with the defendant's forum-related activity.

Buckeye Boiler Co. v. Superior Court, 71 Cal.2d 893, 898–99, 80 Cal.Rptr. 113, ·118, 458 P.2d 57, 62 (1969). (Citations omitted).

Under the above tests and the related California case law, we believe that the district court's exercise of personal jurisdiction over appellant was consistent with due process.[10] In connection with this issue, appellee's emphasis upon the design and drafting work which went on in Los Angeles is misplaced in light of the proposition that "[a plaintiff's] performance in California cannot give jurisdiction over [a defendant]; it is [a defendant's] activity that must provide the basis for jurisdiction." Belmont Industries, Inc. v. Superior Court, 31 Cal. App.3d 281, 288, 107 Cal.Rptr. 237, 241 (5th Dist. 1973). However, the dispatch of the Ministry engineers to Amco's Los Angeles office and their presence there for several months is sufficient to support a finding of personal jurisdiction over appellant.

In American Continental Import Agency v. Superior Court, 216 Cal. App.2d 317, 30 Cal.Rptr. 654 (2d Dist. 1963), it was held that a California court had personal jurisdiction over a German corporate defendant being sued by a resident plaintiff for payment for purchases of aircraft parts by the German concern. In concluding that the jurisdictional tests had been satisfied, the court cited not only the corporation's "systematic and

---

**10.** To conclude that the assumption of jurisdiction over a defendant comports with due process does not end the inquiry; the exercise of jurisdiction must be reasonable as well. Buckeye Boiler Co. v. Superior Court, 71 Cal.2d 893, 80 Cal.Rptr. 113 (1969); Belmont Industries, Inc. v. Superior Court, 31 Cal.App.3d 281, 107 Cal.Rptr. 237 (5th Dist. 1973). According to the Buckeye court:

> Once it is established that the defendant has engaged in activity of the requisite quality and nature in the forum state and that the cause of action is sufficiently connected with this activity, the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the

state in assuming jurisdiction. 71 Cal.2d at 899, 80 Cal.Rptr. at 118.

In the present case there are considerations cutting both ways. Certainly appellee would find it more convenient to litigate in California rather than in Uruguay. On the other hand the operative facts giving rise to this litigation occurred primarily in Uruguay and as such, evidentiary concerns might point to that forum. It should be noted that California's interest in assuming jurisdiction is not at all clear: Appellee is a Delaware corporation and its brief does not indicate the quantity or quality of its California business; thus the traditional and significant state interest in opening its courts to residents seeking redress may be absent here. *See* 71 Cal.2d at 899, 80 Cal. Rptr. at 118.

continuous" purchase of California goods "in a very substantial amount" but the fact that on four occasions a corporate director had come to California from Germany to expedite the seller's compliance with the sales agreements. The court stated: "It is a reasonable assumption that such acts were of value to [the foreign defendant] in obtaining the performance of the contractual obligations undertaken by the vendor." *Id.* at 322, 30 Cal.Rptr. at 657. It can also be said that the presence of the Uruguayan engineers at the Amco office were of use in expediting performance of the highway construction contracts. We conclude that the trial court had personal jurisdiction over appellant.

## IV.

### *Choice-of-Forum Clauses*

■■■ Should we be wrong in this, however, our error does not materially prejudice appellant because we hold that this action should have been dismissed because of the forum selection clauses in the construction contracts,[11] which provide that suit must be brought in the courts of Uruguay. This holding follows the reasoning of the Supreme Court in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *see* Roach v. Hapag-Lloyd, 358 F.Supp. 481 (N.D.Cal.1973); Jack Winter, Inc. v. Koratron Co., 326 F.Supp. 121 (N.D.Cal.1971). In *Bremen* the Court held that a forum-selection clause[12] found in a "freely negotiated private international agreement" between American and German corporations should be specifically enforced, unless the party re-

sisting enforcement "could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* 407 U.S. at 12, 15, 92 S.Ct. at 1916. While the Bremen Court was addressing itself to the doctrine to be followed by federal courts sitting in admiralty, its emphasis upon "an appreciation of the expanding horizons of American contractors, who seek business in all parts of the world," *id.* at 11, 92 S.Ct. at 1914, is likewise applicable to the situation before us.[13] No contention was advanced below, nor does the record support a claim that the forum-selection clauses in the contracts here were unreasonable or that their inclusion was the product of fraud or over-reaching on the part of appellant. Moreover, we cannot conclude from the record that in litigating in Uruguay, appellee will be "effectively deprived of a meaningful day in court," *id.* at 19, 92 S.Ct. at 1918.

■■■ In concluding that the forum-selection clause should have been given full effect by the court below, we reject appellee's argument that the choice of forum was changed by the consent of all parties. The Amco-Republic assignment contract of June 30, 1966 provides:

Should a dispute, or disputes, arise as a result of this assignment of said contracts which is not disposed of by agreement between parties, it shall be decided in accordance with courts of competent jurisdiction under the laws of the State of Delaware where such dispute, or disputes, concern said contracts, and under the laws of the State of Delaware where such dispute, or

---

**11.** Article 26 of the contract for the construction and improvement of Route 26 provides:
> For the purposes of this contract, the contracting parties place themselves under the jurisdiction and competence of the courts of the Republic of Uruguay.

A similar provision is found in the contract for the construction and improvement of Route 5.

**12.** The contract clause provided as follows:
> Any dispute arising must be treated before the London Court of Justice. 407 U.S. at 2, 92 S.Ct. 1907.

**13.** The *Bremen* Court elaborated:
> For at least two decades we have witnessed an expansion of overseas commercial activities by business enterprises based in the United States. The barrier of distance that once tended to confine a business concern to a modest territory no longer does so. . . . The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts. 407 U.S. at 8–9, 92 S.Ct. at 1912.

disputes concern those of a corporate nature of any claim relative thereto.

Even if we assume, without deciding, that appellant consented to the assignment—or ratified it by continuing to permit the ongoing highway construction despite its purported objections to the assignment—it does not follow that appellant consented to be sued in Delaware as well. Under the terms of the assignment, appellee agreed "to do every act and thing necessary to perform all of the conditions of said contracts in a lawful and good businesslike manner." Thus appellee agreed to assume Amco's obligations under the contracts; among those obligations was the promise to submit to the jurisdiction of the Uruguayan courts. Our review of the assignment contract indicates to us that the clause choosing the Delaware forum properly applies only to disputes between the assignor and assignee thereto.

The judgment of the trial court is reversed and the case is remanded for disposition consistent with this opinion.