Norman G. KELLEY,
Plaintiff–Appellee,
Cross–Appellant,

v.

SEARS, ROEBUCK AND COMPANY; Allstate Life Insurance Company, Defendants–Appellants, Cross–Appellees.

Nos. 87–1246, 87–1387 & 87–1442.

United States Court of Appeals, Tenth Circuit.

Aug. 4, 1989.

* Of the Central District of California.

Alfred T. McDonnell, James E. Scarboro, Denver, Colo., James A. Carleo, Colorado Springs, Colo., for plaintiff-appellee/cross-appellant.

Ann Kane Smith, Pasadena, Cal., Arthur L. Klein, Chicago, Ill., Gregory A. Eurich, Peter H. Rudy, Denver, Colo., for defendants-appellants/cross-appellees.

Before BALDOCK, WRIGHT,* and BRORBY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

Kelley sued Sears and Allstate for bad faith handling of his Workmen's Compensation and long term disability claims. A jury awarded him $2.17 million in compensatory and punitive damages. We reverse the judgment against Allstate and remand for a new trial against Sears on the amount of compensatory and punitive damages.

### I. Background

Sears employed Kelley from 1959–1979. He injured his back in 1970 and applied for Workmen's Compensation benefits. Sears admitted Kelley had sustained 7% permanent, partial disability and paid him a lump sum settlement. In 1974, Kelley re-injured his back, causing an additional 11% disabili-

---

* Honorable Eugene A. Wright, United States Senior Judge for the Ninth Circuit, sitting by desig- nation.

ty. Sears paid him another lump sum and closed his claim.

After he accepted the second settlement, Kelley incurred $400 in medical bills and sought to reopen his claim. He filed a petition with the Workmen's Compensation Commission in May 1979. Sears moved to dismiss the petition, asserting it did not meet the Commission's procedural requirements because Kelley failed to show that his condition had deteriorated since the last settlement.

Kelley responded to that motion with a letter. According to Conaway, an experienced compensation lawyer who testified as an expert, Kelley's letter addressed and cured the petition's deficiencies. Kelley attached to it the reports of two physicians, both of whom indicated a serious deterioration in his condition. The letter said that he was too ill to attend the Commission hearing. Conaway testified that under those circumstances, the Commission usually postpones the hearing.

Kelley sent a copy of the letter and reports to the hearing officer. Apparently, it did not reach the officer until November 7, 1979, about two weeks after the hearing at which Kelley's petition was dismissed.

Sears' attorney had a copy of the letter with him at that hearing. He told the hearing officer, "There is a letter of September 12th, 1979, ... a copy of which is in my file, which states Mr. Kelley's physical condition. I don't think it changes anything...." Counsel did not tell the officer the substance of the medical reports and failed to advise him that Kelley was absent because of illness. The hearing officer dismissed the petition when Kelley failed to appear.

After more than three years of hearings, motions, and further medical examinations, the Commission finally awarded Kelley medical expenses in January 1983. Throughout the intervening years, Sears disputed Kelley's level of disability, despite the unanimous findings of at least four physicians that he had sustained total, permanent disability.

In addition to the Workmen's Compensation coverage he had through Sears, Kelley had a separate long term disability ("LTD") policy with Allstate. It has paid him benefits since April 1977. He claims Allstate breached an implied covenant of good faith by miscalculating his monthly benefits, refusing to cash out his policy, and reducing his monthly entitlement to compensate for a previous overpayment.

Kelley sued Sears and Allstate alleging bad faith handling of his two claims and seeking general and punitive damages. He asserted causes of action under Colorado's common law of bad faith insurance practices and Colo.Rev.Stat. § 10–3–1104 (1973). A jury awarded general damages of $420,000 jointly against Sears and Allstate. It assessed punitive damages of $1,250,000 against Sears and $500,000 against Allstate.

The trial judge denied defendants' motions for JNOV, new trial, and remittitur. Kelley moved to amend the judgment to include prejudgment interest from May 30, 1978, the date he claims his cause of action against Allstate accrued. The court awarded interest from May 30, 1984, the date Kelley filed his complaint. He seeks the additional prejudgment interest.

## II. Allstate Claims

Kelley bases his cause of action against Allstate on Colorado's common law of bad faith, *see Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1273–74 (Colo.1985), and on Colo.Rev.Stat. § 10–3–1104. The statute defines and prohibits unfair or deceptive practices in the insurance industry. *See* Colo.Rev.Stat. § 10–3–1101 (1973).

 Allstate asserts correctly that the Employee Retirement Income Security Act preempts Kelley's suit.[1] ERISA's provi-

---

1. Kelley argues that Allstate abandoned its federal preemption argument. It raised preemption in its answer and the stipulated pre-trial order. It argued the issue to the district court and advances it on appeal. We may consider the question although the district court failed to address it. *See, e.g., Lurch v. United States,* 719 F.2d 333, 339 (10th Cir.1983) (a pre-trial order that sufficiently defines the issues will generally control at trial and on appeal), *cert. denied,* 466

sions preempt all state laws that "relate to" any employee benefit plan. 29 U.S.C. § 1144(a) (1982). Kelley's long term disability policy is such a plan. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) ("[A] state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'") (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985)); *Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1264 (10th Cir.1988).

The "saving clause" found in 29 U.S.C. § 1144(b)(2)(A) saves from preemption only those causes of action under state law that "regulate" insurance. In making this determination, the court first considers a "common sense view" of the language of the saving clause. *See Pilot Life*, 107 S.Ct. at 1553. Second, it determines whether the cause of action falls under the "business of insurance," applying three criteria:

(1) whether the state law has the effect of transferring or spreading a policyholder's risk;

(2) whether the state law is an integral part of the policy relationship between the insurer and the insured; and

(3) whether the state law is limited to entities within the insurance industry.

*Id.* 107 S.Ct. at 1553–54. *Pilot Life* held that ERISA's saving clause did not preserve actions under Mississippi's bad faith insurance law. *Id.* at 1558. The Court found that the law failed to satisfy the tests above and conflicted with ERISA's exclusive civil enforcement scheme. *Id.*

Kelley contends without merit that Colorado's bad faith insurance law "regulates" insurance and falls within the saving clause. A Colorado federal district court held recently that the law under which Kelley seeks relief is "very similar in substance" to the Mississippi law at issue in *Pilot Life. See Denette v. Life of Indiana Ins. Co.*, 693 F.Supp. 959, 966 (D.Colo.

1988). *Denette* decided the saving clause did not preserve a bad faith claim based on Colo.Rev.Stat. § 10–3–1104, the very statute under which Kelley seeks relief.

The court treated the statute under the approach articulated in *Pilot Life* and concluded that although it applied only to the insurance industry, it failed to satisfy two of the three criteria above. *Id.* Section 10–3–1104 does not spread policyholder risk; rather, it prevents and remedies unfairness in the insurance industry. *Id.* It is not integral to the insurance relationship, since it does not control the substantive terms of the insurance contract itself.[2] *Id.; see Pilot Life*, 107 S.Ct. at 1555 ("[T]he common law of bad faith does not define the terms of the relationship between the insurer and the insured....").

We agree with the *Denette* court's analysis of § 10–3–1104 and its application of *Pilot Life.* We also conclude for similar reasons that Colorado's common law of bad faith does not regulate insurance. It neither spreads policyholder risk nor controls the substantive terms of the insurance contract. *See Pilot Life*, 107 S.Ct. at 1554–55. Although associated with the insurance industry, this law developed from the general principles of tort and contract law. *See id.* at 1555. Finally, Colorado's common law of bad faith conflicts with ERISA's civil enforcement remedies. *See id.* at 1556–57 ("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive."); *Denette*, 693 F.Supp. at 966 n. 2. Because ERISA preempts Kelley's cause of action against Allstate, we reverse the judgment against it of both compensatory and punitive damages.

### III. Sears Claims
#### A. Sufficiency of the Evidence

■ Kelley also sues Sears under Colorado's bad faith insurance law. Sears

---

U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984). The issue is one of law and beyond doubt. *See, e.g., Cavic v. Pioneer Astro Indus., Inc.*, 825 F.2d 1421, 1425 (10th Cir.1987).

**2.** Furthermore, the statute conflicts with ERISA's comprehensive framework for claims handling. *See* 693 F.Supp. at 966 n. 2.

claims he failed to establish a *prima facie* case of bad faith and that the trial judge erred in denying its motions for directed verdict and JNOV.

Kelley counters that Sears' objections to his petition's inadequacies were hypertechnical and that most Workmen's Compensation insurers would have paid the $400 in medical bills without requiring a formal reopening. He asserts that Sears had uncontroverted evidence, including the report of a physician it selected, that his disability was severe and his condition deteriorating.

A directed verdict is appropriate only if the proof weighs so overwhelmingly in favor of the movant as to permit no other rational conclusion. *E.g., Koch v. City of Hutchinson,* 814 F.2d 1489, 1495 (10th Cir. 1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). We must give the opposing party the "benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *E.g., Martin v. Unit Rig & Equip. Co.,* 715 F.2d 1434, 1438 (10th Cir.1983).

Colorado law governs the substantive elements of proof in an action for bad faith insurance dealings. *See id.* To establish a *prima facie* case, Kelley must prove (1) that a reasonable insurer under the facts and circumstances would not have denied or delayed payment of the claim and (2) that the insurer either knew or recklessly disregarded the fact that its conduct was unreasonable. *Savio,* 706 P.2d at 1274–75.

The evidence creates a question of fact as to whether Sears acted reasonably when it opposed Kelley's petition. His expert testified that most employers would have paid the claim without requiring a formal reopening and would not have continued to dispute his disability in the presence of uncontradicted medical findings.

The evidence also raises a question of fact as to whether Sears knew or recklessly disregarded the fact that its conduct was unreasonable. It had reopened Kelley's claim after the first lump sum settlement without requiring that he file a petition. It terminated his employment based on Allstate's determination that he was totally disabled. Several uncontroverted medical reports state that Kelley was unable to work. At the hearing, rather than disclose crucial information about his claim or that he was physically unable to attend, the attorney for Sears misled the officer, resulting in the dismissal of the petition.

This evidence supports the reasonable inference that Sears acted recklessly or knew its opposition to his petition was unreasonable. Because a jury may conclude rationally that Sears acted in bad faith, the judge denied correctly Sears' motions for directed verdict and JNOV.[3]

## B. New Trial on Compensatory Damages

■ The jury awarded compensatory damages jointly against Sears and Allstate. Sears argues persuasively that, even if we find the evidence sufficient to support the verdict of liability, reversal of the judgment against Allstate requires that we grant a new trial on compensatory damages.

Over objection, the trial judge admitted evidence of both companies' net worth, and

---

**3.** Sears contends that even if the evidence does support a finding of liability, it should nevertheless get a new trial on that issue because of trial court error. It claims that the trial court erred by admitting as evidence the motion to dismiss Kelley's petition and in permitting two experts, Conaway and Paull, to testify.

These contentions have no merit, but we do not address them. Sears, except as to Paull, either failed to object during trial or at least to indicate where in the record it did so. *See* 10th Cir. R. 28.2(e) ("[T]he party shall state where in the record a proper objection was made to the ruling and whether the objection is recorded and ruled upon."). We do not address the ob-

jections to Paull's testimony because it relates only to the claim against Allstate preempted by ERISA.

We also find no merit in Sears' assertion of mistrial due to two "golden rule" references. Even assuming "golden rule" references occurred, the remarks had no effect since we reverse and remand the damages awards on other grounds. *See infra; Shultz v. Rice,* 809 F.2d 643, 652 (10th Cir.1986) (use of "golden rule" argument not improper when urged on the issue of ultimate liability); *but see Edwards v. City of Philadelphia,* 860 F.2d 568, 574 n. 6 (3rd Cir.1988).

instructed the jury that it could consider the evidence only on the issue of punitive damages. He gave two verdict forms: if the jury was able to apportion compensatory damages, it was to use verdict form #1 and, if not, it was to use a combination of verdict forms #1 and #2. Sears did not object to the use of verdict form #2, nor to the instruction permitting the jury to award damages jointly. The jury failed to apportion compensatory damages and awarded Kelley a total of $420,000.

The introduction of evidence of Allstate's net worth and its tortious behavior most likely caused the jury to award greater compensatory damages against both defendants than it would have if Sears defended alone. We may reverse a joint judgment as to one defendant and sustain it against another unless it involves a cause of action "of such a nature that it might work injustice to one party defendant, if it were to remain intact as against him while reversed for error as to the other defendants...." *Washington Gas Light Co. v. Lansden,* 172 U.S. 534, 556, 19 S.Ct. 296, 304, 43 L.Ed. 543 (1899). Where such injustice may result, we have the power to grant all defendants a new trial. *Id.; see also Camalier & Buckley–Madison, Inc. v. The Madison Hotel, Inc.,* 513 F.2d 407, 422 n. 103 (D.C.Cir.1975).

*Washington Gas Light* was a libel suit against a corporation and two individuals. The judge admitted evidence of the corporation's net worth, but did not instruct the jury that it could use the evidence only for computing punitive damages. The jury returned an award of $50,000 in general damages against all three. In reversing the judgment against the corporation and one of the individuals, the Court ordered a new trial for the remaining defendant. It held:

> [T]he jury has never been called upon to render a verdict against a sole defendant, and while it may be said that whether against one or against all the defendants, the plaintiff suffers the same damage and should be entitled to a verdict for the same sum, still the question arises whether the jury, in passing upon the several liability of the individual defendant, would give a verdict of the same

amount as it would if both the other defendants remained.

*Id.* 172 U.S. at 555, 19 S.Ct. at 304. The plaintiff in *Washington Gas Light* sought redress for a single indivisible injury. Here, where the jury failed to apportion damages based on separate acts, the injustice of allowing the verdict to stand against a single defendant appears even more striking.

We also find persuasive the South Carolina Supreme Court's decision in *Collins v. Smith,* 261 S.C. 334, 200 S.E.2d 71, 73–74 (1973), confirming the continuing validity of *Washington Gas Light.* The plaintiff in *Collins* sued a truck driver and his employer for injuries arising out of a truck accident. The court reversed the judgment against the employer and granted the driver a new trial. Because the plaintiff sought primarily general damages, it found "a clear probability that the verdict of the jury was higher than it would have been against [the driver] alone." *Id.* 200 S.E.2d at 74; *see also Couch v. Mountain States Mixed Feed Co.,* 140 Colo. 213, 343 P.2d 1052, 1057 (1959).

The Tenth Circuit distinguished *Washington Gas Light* in *Howard v. United States,* 214 F.2d 759, 761 (10th Cir.1954). The court found the defendants, husband and wife, jointly liable for $910 in overcharged rent. After the wife appealed successfully, the court refused to grant the husband a new trial. It decided that the retention of his wife as a party defendant in no way prejudiced him because it did not affect the evidence presented. *Id.*

*Howard* is distinguishable. Here, Allstate and Sears engaged in separate acts of bad faith. If Kelley had sued Sears alone, he could never have presented evidence of his dealings with Allstate or of that company's net worth.

The instant case falls squarely within the holdings of *Washington Gas Light* and *Collins.* The jury failed to apportion damages and awarded one sum for the combined conduct of both companies. We believe the jury would not have awarded the same amount against Sears alone. Where

the award of damages is excessive and liability is certain, we may order a new trial on the issue of damages alone. *See Malandris v. Merrill Lynch, Pierce, Fenner & Smith,* 703 F.2d 1152, 1168–69 (10th Cir.1981) (en banc) (plurality opinion), *cert. denied,* 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983).

### C. New Trial on Punitive Damages

The jury awarded punitive damages of $1.25 million against Sears. The court instructed the jury that it could award punitive damages if it found beyond a reasonable doubt that Kelley's injuries were caused by Sears under "circumstances of fraud, malice, insult or wanton or reckless disregard for ... [his] rights and feelings...." We conclude that we must also reverse and remand for new trial this punitive damages award.

Three factors in conjunction dictate our conclusion, although we choose not to decide whether one alone is sufficient. First, whether Kelley introduced enough evidence to present a jury issue regarding punitive damages is an extremely close question. Second, our reversal of the compensatory damages award suggests the same for punitive damages because punitive damages must bear some relation to the actual damages sustained by Kelley. Finally, the $1.25 million award against Sears suggests the possibility of jury passion and prejudice.

■ To support an award of punitive damages, the plaintiff must present sufficient evidence to prove beyond a reasonable doubt that the defendant acted with an evil intent or with such a wanton or reckless disregard for his or her rights as to evidence a wrongful motive. *See* Colo.Rev. Stat. § 13–21–102 (1973); *Gruntmeir v. Mayrath Indus., Inc.,* 841 F.2d 1037, 1040 (10th Cir.1988). Wanton or reckless disregard involves " 'conduct that [1] creates a substantial risk of harm to another and [2] is purposefully performed with an awareness of the risk [3] in disregard of the consequences.' " *Id.* (quoting *Tri-Aspen Const. Co. v. Johnson,* 714 P.2d 484, 486 (Colo.1986)).

The evidence presented to support a finding of such wanton or reckless disregard is sparse, even viewing it in the light most favorable to Kelley.[4] *See Juarez v. United Farm Tools, Inc.,* 798 F.2d 1341, 1343 (10th Cir.1986). Kelley alleges that, as a result of Sears' opposition to his petition, he was unable to attend a pain clinic, whose services he could not afford. He also claims emotional injury. Although we assume Sears' motion to dismiss, its refusal to pay the $400 in medical bills, and its decision to dispute the level of Kelley's disability created a risk that he would sustain the emotional injury he did, the substantiality of this risk presents a close and difficult question.

We find even more problematic the sufficiency of the evidence to establish beyond a reasonable doubt that Sears acted purposefully with an awareness of the risk, disregarding the consequences. Kelley showed only that Sears had access to medical records establishing Kelley's disability and an attending physician's report stating that reapplication to the Commission caused stress and anxiety that aggravated his physical condition.

Although Sears may have been aware of Kelley's need for continued treatment, it knew also that he received both LTD and Social Security disability benefits. We question whether Kelley successfully showed beyond a reasonable doubt that Sears knew or believed its refusal to pay $400 in medical bills would cause him to forgo treatment, and cause substantial emotional trauma, but disregarded these consequences.[5] *See Alley v. Gubser Dev.*

---

4. Kelley does not contend that the evidence supports a finding of malice.

5. Although the district judge submitted the issue of punitive damages to the jury, he apparently also entertained some doubt. On the defendants' objection he stated:

Well, if it is [unsupported by the evidence] it's really to cure at the appellate level because all you [get] to do is take away the punitive damages and they do that a lot in the Tenth Circuit. If you don't give the instruction then you are in error for not giving it, then you [get] to try the whole ... case over,....

*Co.,* 785 F.2d 849, 855–56 (10th Cir.) (evidence must show plaintiff knew or should have known that injury would *probably* result from defendants' conduct), *cert. denied,* 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986).

If this thin sufficiency of the evidence were not enough, we conclude that the reversal of the award of compensatory damages also suggests that we must at least remand the punitive award. Colorado has long recognized that exemplary damages must bear some relation to the actual damages. *See, e.g., Malandris,* 703 F.2d at 1177; *Frick v. Abell,* 198 Colo. 508, 602 P.2d 852, 854 (1979). Without a valid jury determination regarding compensatory damages, we feel ill-suited to review the punitive award properly.[6]

We are finally persuaded by the dramatic size of the award. Our resolution of the compensatory damages issue prevents a useful comparison of the two (and may, by itself, suggest remand); however, the extremely weak evidence of wanton or reckless disregard of the consequences, as mentioned, in conjunction with the small amount originally in dispute, $400, suggests the possibility that the jury was influenced by passion and prejudice when it awarded $1.25 million. *See, e.g., Zamora v. Valley Fed. Sav. & Loan Ass'n,* 811 F.2d 1368, 1371 (10th Cir.1987) (court may allow the plaintiff to remit the excess or order a new trial).

Although we do not determine whether any single factor standing alone would justify reversal, all in conjunction prevent us from permitting this punitive damage award against Sears to stand. We reverse and remand for a new trial along with the issue of compensatory damages.

## IV. Kelley's Cross Appeal

The award of prejudgment interest is a question of law for the trial court. *See Tripp v. Cotter Corp.,* 701 P.2d 124, 126 (Colo.App.1985); *Hayes v. North Table Mountain Corp.,* 43 Colo.App. 467, 608 P.2d 830, 832 (1979). The relevant statute, Colo.Rev.Stat. § 13–21–101, states:

> [I]t is lawful for the plaintiff in the complaint to claim interest on the damages alleged from the date the action accrued. . . .

*See also Briggs v. Cornwell,* 676 P.2d 1252, 1252–53 (Colo.App.1983). Here, the court awarded interest from the date the action was filed, due in part to the difficulty of determining when the action accrued against both Sears and Allstate. A number of acts were committed by both parties.

Because we remand for trial against Sears alone, the trial court should have less difficulty determining the date the action accrued as required under § 13–21–101. We reverse and remand the award of prejudgment interest.

## V. Conclusion

Colorado's bad faith insurance law does not regulate insurance. Accordingly, we reverse the judgment against Allstate as preempted by ERISA. We affirm the finding of liability against Sears and grant a new trial on compensatory and punitive damages. We remand the issue of prejudgment interest.

---

**6.** We also believe *Washington Gas Light,* while not directly on point, supports remand. Kelley was able to introduce evidence of Allstate's net worth, despite objection, that would be inadmissible in a trial against Sears alone. He also introduced evidence of his dealings with Allstate.

We cannot say with confidence that if a verdict had been rendered against Sears alone, it would not have been for a materially less amount. *Cf. id.,* 172 U.S. at 555, 19 S.Ct. at 304 ("[I]t is possible, if not probable, that if a verdict had been rendered against the individual defendant alone, it would have been for a materially less amount."). The jury was aware of a corporate relationship between the two entities and the larger award was made against Sears.