977 F.2d 595
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Marc HENRETTA, Plaintiff-Appellant,
v.
CHRYSLER MOTORS CORPORATION, a Delaware corporation, and
Aetna Life Insurance Company, a Connecticut
corporation, Defendants-Appellees.
Marc HENRETTA, Plaintiff-Appellant,
v.
CHRYSLER MOTORS CORPORATION, a Delaware corporation, and
Metropolitan Life Insurance Company, a foreign
corporation, Defendants-Appellees.
 Nos. 92-5026, 92-5027.
 United States Court of Appeals, Tenth Circuit.
 Oct. 15, 1992.
 
 Before LOGAN, BARRETT and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 The issues in these related appeals are: (a) whether the provisions of two insurance policies which funded an employee benefit plan established pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), are governed by state law or by federal common law, and (b) whether an insurance provision for accidental dismemberment in the form of severance of both feet at or above the ankle covers accidental severance of an interspinous ligament and consequent damage to the spinal cord, resulting in complete loss of function in both feet.
 
 
 3
 The district court held that federal common law applies to policy provisions under ERISA and granted summary judgment in favor of the defendant employer and insurers, holding that, under the provisions of the benefits plan and the two insurance policies, "severance" of feet requires separation of the feet from the body. Mr. Henretta appeals both cases. We affirm.
 
 Background
 
 4
 These cases were presented to both the district court and this court on stipulated facts. Mr. Henretta, a resident of Oklahoma, was an employee of appellee Chrysler Motors Corp. (Chrysler) and was covered by Chrysler's Employee Benefits Plan (the plan). The accidental death and dismemberment coverage under the plan, funded by appellee Aetna Insurance Co. (Aetna) and by appellee Metropolitan Life Insurance Co. (Met Life) under two separate insurance policies, provided benefits for accidental loss of the feet by severance above the ankle. The terms of the plan and of the two insurance policies concerning this benefit provision are essentially identical.[1]
 
 
 5
 In 1989, Mr. Henretta was rendered paraplegic in a motocross accident. His condition was the result of a spinal cord injury caused by complete disruption of the ligament between the spinous processes of the eleventh and twelfth thoracic vertebrae. Mr. Henretta submitted claims for benefits under the Aetna policy and the Met Life policy for accidental dismemberment, claiming that he had suffered a loss of both feet from severance above the ankle. Both Aetna and Met Life denied the claims, each responding that coverage for loss of both feet from severance above the ankle required separation of the feet from the body, rather than functional loss from severance of an interspinous ligament resulting in spinal cord damage.
 
 
 6
 Mr. Henretta brought two actions in the federal district court, one against Chrysler and Aetna and the other against Chrysler and Met Life. With respect to Chrysler, he based federal jurisdiction on 28 U.S.C. § 1331, noting that these were civil actions to recover benefits under ERISA, 29 U.S.C. § 1132(a)(1). With respect to Aetna and Met Life, he asserted diversity jurisdiction under 28 U.S.C. § 1332, and he claimed that interpretation of the insurance policies' provisions should follow Oklahoma state law. Ruling on cross motions for summary judgment in each case, the district court reviewed the administrators' rejection of Henretta's claims to benefits under ERISA de novo because the plans did not grant the administrators discretionary authority to construe the terms of the plans. See Millensifer v. Reirement Plan for Salaried Employees of Colter Corp., 968 F.2d 1005, 1009 (10th Cir.1992), quoting Firestone Tire & Rubber, 489 U.S. at 115. The court held that, pursuant to Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), "state regulatory authority of insurance companies remains [under control of state law] but substantive contract law is pre-empted by ERISA." Henretta v. Chrysler Corp., No. 91-C-291-B, Order at 5 n. 2 (N.D.Okla., Jan. 10, 1992) (Henretta v. Chrysler/Met Life ); Henretta v. Chrysler Corp., No. 91-C-270-B, Order at 5 n. 2 (N.D.Okla., Jan. 10, 1992) (Henretta v. Chrysler/Aetna ). Accordingly, we review de novo.
 
 Standard of Review
 
 7
 First, we will address whether ERISA preempts Oklahoma state contract law in this determination of insurance coverage. "On appeal from a summary judgment order, we apply the same standard employed by the district court in reviewing the Administrator's decision." Woolsey v. Marion Labs, Inc., 934 F.2d 1452, 1456 (10th Cir.1991).
 
 I.
 ERISA Preemption
 
 8
 "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987), quoted in Settles v. Golden Rule Ins. Co., 927 F.2d 505, 508 (10th Cir.1991). In those circumstances, uniform judge-made federal law, "federal common law," should govern, rather than varying state law. See 13B Charles A. Wright et al., Federal Practice and Procedure 2d § 3563, at 60 (1984).
 
 
 9
 In Winchester v. Prudential, No. 90-4201 (10th Cir., filed 9/24/92), the court carefully explained the scope and application of ERISA's preemption sections, which are fully relevant here:
 
 
 10
 ERISA's preemption sections consist of three clauses: the preemption clause,[2] the saving clause,[3] and the deemer clause.[4] The preemption clause broadly preempts all laws that "relate to" an ERISA plan. However, the saving clause limits the preemption clause's application by exempting laws relating to insurance, banking, and securities from the preemption clause's broad sweep. The deemer clause, in turn, creates an exception to the saving clause's exception. Although the saving clause prevents the preemption of insurance, banking, and securities law, an ERISA plan may not be "deemed" to be an insurance, banking, or securities company.[5]
 
 
 11
 In the context of insurance regulation, the deemer clause comes into play when an ERISA plan provides insurance to its participants. A "self-funded plan" pays all benefits itself. In contrast, an "insured plan" purchases insurance policies for its members from an outside insurer. Because a self-funded plan may not be deemed an insurance company, the saving clause does not save state insurance laws from preemption when applied to such a plan directly. On the other hand, the saving clause does save state insurance laws from preemption when they are applied to an insurance policy purchased by an ERISA plan. Thus, whether ERISA preempts a given state insurance law depends on whether the plan in question is self-funded or insured. See Holliday, 111 S.Ct. at 409-10; Metropolitan Life Ins., 471 U.S. at 747.
 
 
 12
 We first apply the preemption clause. The decisions in question certainly address the circumstances under which the ERISA plan here must pay benefits. Hence, the decisions clearly "relate to" the ERISA plan and are preempted unless exempted by the savings clause.
 
 
 13
 Thus, we must apply the saving clause. In Pilot Life, the Supreme court set forth a two-part inquiry to determine if a given law "regulates insurance" within the meaning of the savings clause. As we explained in Kelley v. Sears, Roebuck & Co., 882 F.2d 453 (10th Cir.1989):
 
 
 14
 [T]he court first considers a "common sense view" of the language of the saving clause. Second, it determines whether the cause of action falls under the "business of insurance," applying three criteria: (1) whether the state law has the effect of transferring or spreading a policyholder's risk; (2) whether the state law is an integral part of the policy relationship between the insurer and the insured; and (3) whether the state law is limited to entities within the insurance industry.
 
 
 15
 Id. at 456 (citing Pilot Life, 481 U.S. at 48-49); see also Hanslip, 939 F.2d at 907.
 
 
 16
 Common sense dictates that the Utah decisions in question do regulate insurance. Laws that specifically regulate the terms of the insurance contracts clearly regulate insurance. See Metropolitan Life, 471 U.S. at 740-41. The three criteria of the "business of insurance" similarly support this conclusion. First, the decisions do have "the effect of transferring or spreading a policyholder's risk." The more liberally a court construes the phrase "accidental bodily injury," the more risk is transferred from the individual policyholder to all policyholders. Conversely, if a court construes the phrase more strictly, the individual retains more risk and other policyholders bear less. See Senkier v. Hartford Life & Acc. Ins. Co., 948 F.2d 1050, 1052 (7th Cir.1991). Second, the Utah decisions almost by definition affect "an integral part of the policy relationship between the insurer and the insured." The decisions construe the terms of the insurance policy and affect under what circumstances the policyholder may recover. Third, the effect of the Utah decisions "is limited to entities within the insurance industry." Although arguably the decisions involve the more general realm of contract law, the necessity to interpret the phrase "accidental bodily injury" in an insurance policy arises, of course, only in the context of the insurance industry. Indeed, the Utah cases make it clear that interpretation of the phrase in other contexts, such as worker's compensation cases, provides no help in the insurance context. See, e.g., Hoffman v. Life Ins. Co. of North America, 669 P.2d 410, 415 (Utah 1983) (discussing meaning of " 'accidental' as used in an accidental death insurance policy" ) (emphasis added); Elton v. Bankers Life & Cas. Co., 516 F.2d 165, 171 (Utah 1973) (distinguishing worker's compensation cases).
 
 
 17
 After consideration of Pilot Life's two-step inquiry, we conclude that the saving clause does save the Utah decisions at issue from preemption. Having so concluded, we must finally consider whether the deemer clause requires the preemption of the decisions despite the saving clause. Winchester brought this suit not against the plan itself but against Prudential, which underwrites the accidental death and dismemberment insurance policy at issue here. Thus, for purposes of that policy, the plan was insured rather than self-funded. The deemer clause therefore does not apply.
 
 
 18
 Based on all of the foregoing, we conclude that ERISA does not preempt the Utah decisions that we consider below.
 
 
 19
 (Slip Opinion, pp. 7-10).
 
 
 20
 All of the above reasoning applies with equal force here except that we are concerned with Oklahoma law, rather than Utah law.
 
 II.
 Construing the Insurance Policies
 
 21
 Judicial interpretation of the provisions of the Aetna policy and the Met Life policy requires our examination of the law of the state of Oklahoma. We must determine how the Oklahoma courts would decide the question.
 
 
 22
 We now turn to the district court's determination that Aetna and Met Life appropriately denied coverage for Mr. Henretta's injury. The district court held that functional uselessness of both feet from spinal injury is not equivalent to loss of both feet from severance, as defined by the Aetna and Met Life policies. Henretta v. Chrysler/Met Life, Order at 8; Henretta v. Chrysler/Aetna, Order at 8.
 
 
 23
 We note that under a similar injury and insurance coverage claim, the District Court for the Western District of Oklahoma has applied Oklahoma law to hold that " 'loss' of hands unambiguously means severance as opposed to loss of use." Traverse v. World Serv. Life Ins. Co., 436 F.Supp. 810, 812 (W.D.Okla.1977); see also Great N. Life Ins. Co. v. Tulsa Cotton Oil Co., 182 Okla. 107, 76 P.2d 913, 913 (1938) (loss of use of hand mangled in an accident is not covered under policy defining loss as "dismemberment between the wrist and elbow joints").
 
 
 24
 The Fourth Circuit recently considered a similar case, DeWitt v. State Farm Ins. Co. Retirement Plan for United States Employees, 905 F.2d 798 (4th Cir.1990). In DeWitt, the plaintiff lost the use of his right foot during kidney transplant surgery when surgeons severed an artery in his leg, causing irreversible nerve damage and rendering his foot flaccid and useless. The accidental death and dismemberment coverage of his employee benefits plan, in a manner common to such coverage, defined the "loss" of feet as "actual severance through or above the ... ankle joints." Id. at 802. The Fourth Circuit held that " 'actual severance' is not ambiguous, and ... it should be construed literally, not as a 'functional severance.' " Id.[6]
 
 
 25
 We believe that the Oklahoma state courts would arrive at the same conclusion in the case before us for two reasons. First, the term "loss from severance" in the insurance policies funding the plan is unambiguous--it means physical separation of the foot from the body. The mutation of that definition to "loss of function from disruption of a related physical system" is an unwarranted expansion and a distorition of the common sense, reasonable definition. Second, the insurance policies funding the benefit plan, and the premiums for those policies, were based on underwriting computations for accidental separation of the feet from the body rather than loss of function due to accidental spinal injury. While functionally Mr. Henretta's feet may be equivalent to those which have been severed, the rate and circumstances of occurrence of accidental severance and accidental spinal injury resulting in paraplegia are not equivalent. In addition, severed feet and paraplegia are conterminous only as to the post-accident function of the feet. The two injuries have very different complications and attendant health dangers, rendering them very different medical problems.
 
 
 26
 We AFFIRM.
 
 
 
 *
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The plan provides for benefits "[i]f your loss is: ... accidental loss of more than one ... foot.... 'Loss' means with regard to a ... foot, severance at or above the ... ankle joint." Appendix to Brief of Defendants-Appellees Chrysler Corp. and Aetna Life Ins. Co., No. 92-5026 (Chrysler/Aetna Appendix), Summary Plan Description, at 11; Supplemental Appendix of Defendants-Appellees Chrysler Corp. and Metropolitan Life Ins. Co., No. 92-5027 (Chrysler/Met Life Appendix), "Chrysler Corporation employee benefit plan summary plan description booklet entitled 'Employee Benefits Life and Disability Programs [for] Professional-Administrative, Management and Executive Employees,' " at 11. Accord, Chrysler/Aetna Appendix, Group Ins. Policy No. GC-334000, Rider dated 12/1/80 for page 6-ADDC; Chrysler/Met Life Appendix, Group Ins. Policy No. 3903-G1, Rider effective May 1, 1985, at 2
 
 
 [2]
 The preemption clause provides, "Except as provided in [the saving clause,] the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a)
 
 
 [3]
 The saving clause provides, "Except as provided in [the deemer clause], nothing in [ERISA] shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A)
 
 
 [4]
 The deemer clause provides, "Neither an employee benefit plan ..., nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B)
 
 
 [5]
 We emphasize that ERISA preemption covers state decisional law as well as state statutory law. See U.S.C. § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.") Similarly, the saving clause can exempt state decisional law as well as state statutory law from the scope of ERISA's preemption. See Pilot Life, 481 U.S. at 48 n. 1; Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1440 n. 1 (9th Cir.1990). Thus, we utilize ERISA preemption analysis to determine whether to apply the applicable Utah decisions in this case
 
 
 [6]
 There are numerous cases interpreting the same or similar policy language under state law, in both federal and state courts. The majority position is that loss of function is not equivalent to loss by severance. See J.L. Isham, Annotation, Accident Insurance: What is "Loss" of Body Member, 51 A.L.R.4th 156 (1987) (citing cases)