Elizabeth HALL

v.

PENNWALT GROUP COMPREHEN-
SIVE MEDICAL EXPENSE BENE-
FITS PLAN, Pennwalt Corporation and
Travelers Insurance Company.

Civ. A. No. 88–7672.

United States District Court,
E.D. Pennsylvania.

Dec. 27, 1988.

Jeffrey L. Pettit, Hepburn, Wilcox, Ham-
ilton & Putnam, Philadelphia, Pa., for plain-
tiff.

Jerome A. Hoffman, Michael Salmanson,
Philadelphia, Pa., for defendant—Pennwalt
Group Comprehensive, etc.

Susan Katz Hoffman, Caren Litvin
Sacks, Pepper, Hamilton & Scheetz, Phila-
delphia, Pa., for defendant—Travelers In-
surance Co.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, Senior District
Judge.

Presently before the court is defendant
Pennwalt Corporation's (Pennwalt) motion
to dismiss Count V of the complaint. For
the reasons stated hereafter defendant's
motion will be denied.

## I. FACTUAL BACKGROUND

Plaintiff Elizabeth Hall commenced the
present action[1] to recover medical expense
benefits allegedly due her under a group
insurance policy issued to her employer
Pennwalt by defendant The Travelers In-
surance Company (Travelers). Plaintiff
claims federal jurisdiction pursuant to 29
U.S.C. § 1132(e).

Plaintiff began her employment as a cus-
tomer sales representative for defendant
Pennwalt in April of 1985. In February
1986 plaintiff allegedly became disabled as
a result of performing the duties of her
job. Pennwalt subsequently terminated
her employment effective August 1, 1986
and her coverage under Pennwalt's Group
Comprehensive Medical Benefits Plan
(hereinafter group benefit plan) effective
August 31, 1986. Count V of the complaint
specifically alleges that neither Pennwalt
nor Travelers notified plaintiff of her right
to convert her coverage under the Travel-
ers group benefit plan to coverage under
an individual policy as required by 40 Pa.
Stat.Ann § 756.2(d)(19) (Purdon Supp.1988)
(hereinafter section 756.2(d)(19) or the
Pennsylvania statute) which states at perti-
nent part:

Each certificate holder in the insured
group shall be given written notice of

---

1. Count I of the complaint alleges a claim for
benefits allegedly due her under Pennwalt's
group comprehensive medical benefits plan.
Count II alleges the benefit plan used an inade-
quate claim procedure under section 503 of
ERISA, 29 U.S.C. § 1133. Counts III and IV

claim a breach of fiduciary duty by Pennwalt
and Travelers respectively. The instant motion
is addressed solely to Count V and thus the
preceding four counts need not be discussed
further herein.

such conversion privilege and its duration within fifteen days before or after the date of termination of group coverage, provided that if such notice be given more than fifteen days but less than ninety days after the date of termination of group coverage, the time allowed for the exercise of such privilege of conversion shall be extended for fifteen days after the giving of such notice. If such notice be not given within ninety days after the date of termination of group coverage, the time allowed for the exercise of such conversion privilege shall expire at the end of such ninety days.

*Id.*

Defendant Pennwalt contends that pursuant to Federal Rule of Civil Procedure 12(b)(6) Count V should be dismissed for failure to state a claim upon which relief can be granted because the statute underlying that claim is preempted by the Employee Retirement Income Security Act, commonly known as ERISA. In the alternative, defendant contends that even if the Pennsylvania statute is not preempted by ERISA; that plaintiff's claim for benefits fails to state a claim upon which relief can be granted because the statute "only provides for a continuation of the election period; it specifically precludes the creation of additional rights and remedies." Memorandum of Law in Support of Defendant Pennwalt's Motion to Dismiss Count V of the Complaint, at 2 n. 1 (hereinafter Defendant's Brief). After a discussion of the applicable provisions of ERISA, I will address defendant's arguments *seriatim.*

## II. DISCUSSION

### A. *Applicable ERISA Provisions*

Three subsections of the ERISA statute determine whether the Pennsylvania statute at issue is preempted by federal law. First, the comprehensive preemption provision found in subsection (a) of 29 U.S.C. § 1144 states:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan

described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (1982). Second, the "insurance savings clause," section 1144(b)(2)(A) states that, with one exception, nothing in ERISA "shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities." Third, the "deemer clause" exception to the insurance savings clause provides that

[N]either an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(a)(2)(B).

Against that background, federal preemption of the Pennsylvania statute thus depends on whether section 756.2(d)(19) of the Pennsylvania statute "relates to" an employee benefit plan insofar as defendant Pennwalt is concerned or merely regulates the "business of insurance" and is exempt from preemption under the insurance savings clause. *See* 29 U.S.C. § 1144(a)–(b) (1982).

### B. *ERISA Preemption Provision*

I conclude that, as applied to defendant Pennwalt Corporation, section 756.2(d)(19) "relates to" an employee benefit plan within the meaning of 29 U.S.C. § 1144(a). In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court stated that the term "relates to" should be given "its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Id.* at 47, 107 S.Ct. at 1553 (citing *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–100, 103 S.Ct. 2890, 2899–

02, 77 L.Ed.2d 490 (1983)). The Supreme Court has particularly emphasized that the preemption clause is not limited to "state laws specifically designed to affect employee benefit plans." *Id.* (citing *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900). However, inasmuch as section 756.2(d)(19) specifically relates to "[g]roup accident and sickness insurance" it necessarily impacts upon group employee benefit plans that utilize insurance programs to pay benefits, and most certainly the one at issue in this case.[2] The Pennsylvania statute thus "relates to" an employee benefit plan and therefore falls under ERISA's express preemption clause. *See Pilot Life*, 481 U.S. at 47, 107 S.Ct. at 1553.

### C. The Insurance Saving and Deemer Clauses

Plaintiffs argue that even if the Pennsylvania statute initially appears to be subject to preemption under ERISA that it is nonetheless "saved" under the insurance savings clause which preserves any state law "which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(B) (1982). Thus, the relevant inquiry is whether section 756.2(d)(19) regulates insurance? I conclude it does.

The term "state law" includes all laws, decisions, rules, regulations, or other state action having the effect of any law of any state. *Id.* at (c)(1). State law will thus be saved from preemption by ERISA if it "regulates insurance" within the meaning of the insurance savings clause.

The seminal case on this issue, which both plaintiff and defendant concede governs the instant case, is *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). In *Metropolitan Life*, the Supreme Court held a state statute that required minimum mental health care benefits for Massachusetts residents who were insured under, inter alia, employee benefit plans, was not preempted by ERISA as applied to insurance contracts purchased by employees health care plans subject to ERISA. *See id.* at 739–47, 105 S.Ct. at 2388–93. The *Metropolitan Life* Court's reasoning is similarly applicable in this case.

To state the obvious, section 756.2(d)(19) regulates the terms of certain insurance contracts, and so seems to be saved from preemption by the saving clause as a law "which regulates insurance." *See Metropolitan Life*, 471 U.S. at 740, 105 S.Ct. at 2389. As applied to the facts of this case, the Pennsylvania statute specifically regulates the contractual relationship between the plaintiff "certificate holder" and her insurer, by mandating both that notice be given of her possible conversion rights and the terms under which an individual policy is to be issued therefrom. *See* 40 Pa.Stat. Ann. § 756.2(d) (Purdon Supp.1988).

This "common sense" view that section 756.2(d)(19) regulates insurance is reinforced by the language of the "deemer clause," which states that an employee benefit plan shall not be deemed to be an insurance company "for purposes of any law of any state purporting to regulate insurance companies, *insurance contracts*, banks, trust companies or investment companies." *Metropolitan Life*, 471 U.S. at 740–41, 105 S.Ct. at 2389–90 (citing 29 U.S.C. § 1144(b)(2)(B)) (emphasis added by Supreme Court). By exempting from the savings clause laws regulating insurance contracts that apply directly to benefit plans, the deemer clause makes explicit Congress' intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the savings clause. *Id.* at 741, 105 S.Ct. at 2389. Unless Congress intended to include laws regulating contracts within the scope of the insurance savings clause, it would have been unnecessary for the deemer clause when they are applied directly to

---

2. *Compare* 40 Pa.Stat.Ann. 756.2(a) & (a)(1) ("Group accident and sickness insurance is hereby declared to be that form of accident and sickness insurance covering groups of persons defined in this section ... [such as] a policy issued to an employer or trustees of a fund established by an employer.") *With* 29 U.S.C. § 1002(1) & (3) (defining an "employee benefit plan" as a "fund, or program which ... is ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries....") *See also* Complaint, para. 2, at 1–2 ("Defendant Pennwalt Group Comprehensive Medical Expense Benefits Plan ... is an employee welfare benefit plan within the meaning of Section 3(1) of [ERISA].")

benefit plans. *Id.* It is also important to note that the underlying basis of Count V is not against Pennwalt for *being* an employee benefit plan, but rather for violating the contractual obligations placed upon it by the Pennsylvania statute.

Moreover, it is clear on the face of the Pennsylvania statute that the law was specifically directed toward the insurance industry.[3] *See* 40 Pa.Stat.Ann. 756.2(d) (1982) ("Group Accident and Sickness Insurance"). *See also Pilot Life*, 481 U.S. at 51, 107 S.Ct. at 1555 ("a common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but be specifically directed toward that industry.")

The case law concerning the meaning of the phrase "business of insurance" in the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq. (1982), also strongly supports the conclusion that the Pennsylvania statute falls squarely within the savings clause as a law "which regulates insurance." Cases interpreting the scope of the McCarran–Ferguson Act have identified three criteria relevant to determining whether a practice falls within the Act's reference to the "business of insurance":

> "*[F]irst*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry."

*Pilot Life*, at 48–49, 107 S.Ct. at 1553–54 (quoting *Union Labor Life Ins. Co. v. Pi-*

*reno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982)) (emphasis in original). The Supreme Court has applied these criteria to the preemption sections of ERISA. *Id.; Metropolitan Life*, 471 U.S. at 742–43, 105 S.Ct. at 2390–91.

Viewed individually, section 756.2(d)(19) satisfies the first requirement that a practice within the business of insurance transfer or spread the policyholder's risk. The statute renders the insurer and employer liable for medical expenses if an individual insured under a group policy is not provided with notice of termination of group coverage and possible conversion rights. *See Perry*, at 565–69, 542 A.2d at 87–88. Since the statute mandates action on the part of the insurer and the policyholder/employer, those entities, rather than the insured, would be required to pay for the medical expenses that would have been covered under an individual policy of insurance had the insured been notified of the right to convert. *See id.*

Section 756.2(d)(19) similarly meets the second McCarran–Ferguson criterion, that the practice be an "integral part of the policy relationship between the insurer and the insured." Under the Supreme Court's analysis in *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1555, the Pennsylvania statute does define the terms of the relationship between the insurer and the insured. *See* 40 Pa.Stat.Ann. 756.2(d)(1–19) (Purdon Supp.1988). Therefore, it is an integral part of the relationship between insurer and insured. Finally, the Pennsylvania statute meets the third criterion because the notice requirement applies only to entities within the insurance industry. The

---

**3.** This opinion is further supported by the legislative history of section 756.2(d)(19) which "reveals that it was designed to protect terminated employees from being unknowingly cancelled under a group policy and subjected to personal liability for substantial medical expenses." *Perry v. Middle Atl. Lumbermens Assoc.*, 373 Pa.Super. 554, 564, 542 A.2d 81, 86 (1988). On the third consideration of the bill which ultimately became section 756.2(d)(19) before the Pennsylvania House of Representatives, the purpose of the bill was aptly summarized by Representative Taylor as follows:

> "Mr. Speaker, this is probably one of the greatest reforms in the insurance business in

the last half century in this state. It has been long overdue.

> This bill is designed to make sure that the people who are covered under group hospitalization policies, when that group certificate is cancelled, that the individual certificate holders are notified. This is something that has been going on for too many years, too long. I would urge everyone to support this piece of legislation because it is long overdue and it really is a major reform in the insurance industry."

*Id.* (quoting House Journal p. 4639 (May 12, 1976) (statement of Rep. Taylor)).

statute does not apply to plans funded with the assets of the employer or self-insured plans. *Id.* at § 23 (Purdon 1971) (stating the provisions of the Pennsylvania Insurance Department Act of 1921, with some exceptions inapplicable here, "shall not apply ... to beneficial or relief associations conducted not for profit formed by ... classes, firms, or corporations ... and to members and employees of such firms or corporations.")

For the foregoing reasons, I conclude that section 756.2(d)(19) is a law which regulates insurance and is saved from preemption by the operation of the insurance saving clause. *See Metropolitan Life,* 471 U.S. at 744 & n. 21, 105 S.Ct. at 2391 & n. 21; *see also* Op.Pennsylvania Att'y Gen. No. 75-22 (1975) (ERISA preempts state regulation with respect to employee benefit plans and their administration, except with regard to any contractual agreement between such a plan and a bank, insurance company or other entity whose activities are regulated by any statute or agency of the Commonwealth of Pennsylvania). This decision additionally comports with the presumption enunciated by the Supreme Court against preemption in the area of insurance regulation, an area of traditional state concern. *Metropolitan Life,* 471 U.S. at 741, 105 S.Ct. at 2390 ("The presumption is against pre-emption, and we are not inclined to read limitations into federal statutes in order to enlarge their preemptive scope.").

Finally, I note that the Pennsylvania statute in no way conflicts with any other applicable subsections of ERISA. Nor does ERISA provide any remedy similar to that found in section 756.2(d)(19) for the failure of the insurer and/or employer to give notice to an insured employee of possible conversation rights.

D. *Lack of Remedy Under the Pennsylvania Statute*

In footnote 1 of its memorandum, Pennwalt contends that the plaintiff has no further remedy for Pennwalt's failure to give notice under section 756.2(d)(19). Defendant's motion to dismiss will be denied for two reasons. First, Pennwalt apparently misconstrues the statute which it cites in support of its motion. A review of section 756.2(d) shows that the portion quoted by defendant applies *only* to section 756.2(d)(20) which exempts labor organizations from certain liability and is facially inapplicable here.

Second, the Pennsylvania Superior Court (which did not address the issue of federal preemption) concluded recently that where an individual insured under a group policy is not provided with notice of conversion rights within ninety days from the termination of group coverage, the insurer remains liable for medical expenses incurred up until such time as notice is given. *Perry v. Middle Atl. Lumbermens Assoc.,* 373 Pa.Super. 554, 565–69, 542 A.2d 81, 87–88 (1988) (construing 40 Pa.Stat.Ann § 756.2(d)(19) (Purdon Supp.1988)). The insurer may thereafter, in some instances, seek contribution from the group policyholder which in this case would be Pennwalt. *Id.* Defendant's motion for dismissal on grounds that plaintiff has no further remedy will thus be denied.

III. CONCLUSION

For the reasons set forth above, Pennwalt's motion for the dismissal of Count V on grounds of federal preemption and that plaintiff has no remedy at law will be denied.