**Chuck STOCK, Appellant,**

v.

**SHARE, A Health Maintenance Organization; United Behavorial Systems, formerly known as United Clinics of Counseling; William Ford, Appellees.**

No. 92–3817.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1993.

Decided March 3, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 25, 1994.

Counsel who presented argument on behalf of the appellant was Edward T. Fogarty of Omaha, NE.

Counsel who presented argument on behalf of the appellees was Leo A. Knowles of Omaha, NE. Ronald G. Fleming, appeared on the brief.

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

WOLLMAN, Circuit Judge.

Chuck Stock brought this action against Share, United Behavioral Systems ("UBS"), and Dr. William Ford, seeking benefits for his alcohol-dependency treatment as well as declaratory, injunctive, and other remedial relief. The district court[1] denied all of his claims. We affirm.

## I.

As part of his employee benefit plan at Union Pacific Railroad, Stock was a member of Share from 1986 through 1988. Share, a health maintenance organization, provides medical, surgical, and hospital services and benefits to its members. Upon enrollment in Share, each member selects a plan physician, who serves as the member's primary care physician. In general, Share provides or arranges only health care services that are deemed medically necessary by the plan physician. The plan physician either directly provides the necessary care or refers the member to a specialist or hospital.

On November 1, 1986, Share contracted with UBS to provide mental-health treatment

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

and chemical-dependency treatment to Share members. If a Share member has an alcohol-dependency problem, his plan physician refers him to UBS. UBS then evaluates his case and either provides or manages his treatment. Under UBS's established protocols, if a person has been physically detoxified, UBS will authorize inpatient treatment in a hospital only for crisis intervention and medical and psychological stabilization. If a person is physically and mentally stable, UBS typically places him in outpatient services for therapy and rehabilitation.

The Share Subscription Certificate (the "Certificate") sets forth the terms of Share's coverage. Prior to November 1990, when the Certificate was revised, Section 10 of the Certificate contained the following provision:

> When deemed MEDICALLY NECESSARY by a PLAN PHYSICIAN, SHARE will provide to each MEMBER ... the following health care services and benefits ...:
>
> ....
>
> 10.6 Alcohol and Chemical Dependency
>
> Outpatient evaluation and diagnosis and outpatient short-term therapeutic services. Outpatient Services are not to exceed thirty (30) individual visits or forty-five (45) group therapy visits per twelve (12) month period.

Additionally, Section 11 read, in pertinent part, as follows:

> When deemed MEDICALLY NECESSARY by a PLAN PHYSICIAN, the PLAN will provide or pay for the following necessary inpatient services ...:
>
> ....
>
> 11.4 Alcohol and Chemical Dependency
>
> (a) Inpatient services and supplies at the rate of semi-private accommodations, not to exceed thirty (30) days per twelve (12) month period.
>
> (b) Services, not to exceed thirty (30) days per twelve (12) month period, of a PLAN PHYSICIAN, or CONSULTING PHYSICIAN, or other PLAN personnel while the MEMBER is confined as a bed patient in an approved chemical dependency facility or program.

> (c) The MEMBER shall pay 20% of eligible inpatient facility and extended care facility charges.

In May 1987, Stock had alcohol, gambling, and marital problems. On May 31, Stock told his marriage counselor, Dr. Joseph Rizzo, a clinical psychologist, that he was contemplating suicide. Dr. Rizzo contacted the office of Stock's plan physician. Stock's case was then referred to UBS. Upon learning of Stock's mental state, Dr. Fred Strider, clinical director of UBS, authorized a three-day emergency admission for Stock at University Psychiatric Services ("University") for inpatient mental-health treatment. After these three days, UBS authorized four additional days for Stock at University.

While at University, Stock was treated by Dr. Jasbir J. Kang, a psychiatrist under contract with and approved by Share. In Stock's discharge summary, Dr. Kang recommended that Stock receive "inpatient therapy for his gambling as well as his alcohol abuse." Based upon Dr. Kang's records, Dr. Ford, a clinical psychologist and executive director of UBS, determined that upon discharge from University Stock should receive four days of alcohol-dependency treatment at St. Gabriel's Center, a licensed inpatient chemical-dependency treatment center that is not a hospital or medical facility. Dr. Ford further recommend that Stock's treatment options be re-evaluated after his four days at St. Gabriel's. Dr. Ford did not believe that Stock needed inpatient treatment in a hospital because Stock was physically as well as psychologically stable. Dr. Ford believed, however, that non-hospital inpatient treatment was warranted because Stock was unstable socially.

Nonetheless, following his discharge from University on June 8, 1987, Stock did not enter St. Gabriel's. Instead, he entered Immanuel Hospital's Alcoholic Rehabilitation Center ("Immanuel") for inpatient alcohol-dependency treatment. Share informed Stock by correspondence dated June 9, 1987, that his admission to Immanuel had not been an emergency, that prior approval had not been obtained from UBS, and, therefore, that Share would not pay for the treatment.

Stock continued his treatment at Immanuel, however, until July 7, 1987.

Stock presented Share a claim for $4,782, eighty percent of the cost of his treatment at Immanuel. Share denied the claim, finding that the referral to St. Gabriel's had been appropriate and that Stock's admission to Immanuel had not been authorized by his plan physician or UBS. Stock appealed the denial through Share's formal review process. Share again denied the claim, reaffirming that St. Gabriel's could have provided an appropriate treatment program for Stock and finding that his admission to Immanuel was not medically necessary.

Stock then filed this action. Based upon breach-of-contract and misrepresentation allegations, he claimed that he is entitled to eighty percent of the cost of his Immanuel treatment. Pursuant to 29 U.S.C. § 1132(a)(3), he also prayed for injunctive, declaratory, and other remedial relief on behalf of past, current, and future Share members.

After Stock had presented his case-in-chief, the district court dismissed UBS and Dr. Ford, stating that Stock had presented no evidence that supported a claim against them. At the close of trial, the court held that Stock's breach-of-contract and misrepresentation claims were pre-empted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. Applying a de novo standard of review, the court denied Stock's request for benefits. The court found that Stock had failed to show that his treatment at Immanuel was medically necessary, as required by the Certificate's terms. The court found further that Stock lacked standing to seek relief on behalf of other Share members because he was not a Share member when he filed this action. Last, the court found that Stock had presented no evidence that he was entitled to any declaratory or injunctive relief.

## II.

### A. Benefits Claim

■ Stock argues that the district court erroneously denied his claim for benefits. Both parties agree that the Share plan is an employee benefit plan subject to ERISA. Accordingly, insofar as Stock's breach-of-contract and misrepresentation claims to recover benefits are based on state law, the district court properly found that they are pre-empted and that section 1132(a)(1)(B) of ERISA provided Stock's exclusive remedy. 29 U.S.C. § 1144(a); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987); *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir.1993) (finding that ERISA pre-empted state law breach-of-contract claim); *Slice v. Norway*, 978 F.2d 1045, 1047 (8th Cir.1992) (finding that ERISA pre-empted state law misrepresentation claim).

■ A "denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). If a plan grants such authority, courts review the denial of benefits under an arbitrary-and-capricious standard. *Id.; Oldenburger v. Central States S.E. & S.W. Areas Teamster Pension Fund*, 934 F.2d 171, 173 (8th Cir.1991).

Share argued before the district court that the arbitrary-and-capricious standard should be applied because the Certificate granted Share the authority to determine whether health care was medically necessary. Because we affirm the district court's findings that Stock was not eligible for benefits, we need not decide which standard of review is applicable in this case.

The district court found that Stock had proved that he needed inpatient treatment for alcohol dependency on June 9, 1987. The court found further, however, that Stock had failed to show that hospital, as opposed to non-hospital, inpatient treatment was medically necessary as of June 9, or for any part of the period that he had been treated at Immanuel. Stock attacks the court's findings on two grounds.

■ He first argues that the district court erred by finding that inpatient treatment could be provided in a non-medical facility. He contends that inpatient treatment, by definition and according to the Omaha medical community, means a month-long stay in a hospital or medical facility. Accordingly, once the district court found that Stock had established that he needed inpatient treatment, the court should have found that he was entitled to a month of inpatient treatment in a hospital.

We conclude that the district court's finding to the contrary is not clearly erroneous. In the context of alcohol-dependency treatment, inpatient treatment does not necessarily have to be treatment in a hospital or medical facility. The testimony of several witnesses established that inpatient treatment also includes treatment in which the recovering person resides away from home in a non-medical facility such as St. Gabriel's. For example, Dr. Ford testified that inpatient treatment for chemical dependency is provided in non-hospital facilities and that St. Gabriel's was such a facility. Dr. Rizzo also stated that St. Gabriel's was an inpatient facility. Additionally, Dr. Kang's discharge summary indicated that St. Gabriel's was an inpatient therapy program.

■ Stock next argues that the district court clearly erred by finding that he had failed to establish that it was medically necessary for him to receive inpatient treatment in a hospital. We disagree. As the district court pointed out, no qualified witness testified that Stock had needed inpatient treatment in a hospital setting.

Dr. Kang's discharge summary recommended that Stock receive inpatient therapy for his gambling and alcohol abuse. Dr. Kang did not indicate, however, that such treatment needed to be in a hospital or medical facility; rather, he noted that Stock's inpatient treatment would probably be conducted at St. Gabriel's. Likewise, although Dr. Anton Frank Piskac, the physician who examined Stock when he entered Immanuel, testified that Stock had needed inpatient treatment, he, too, did not indicate that it was medically necessary for such treatment to be provided in a hospital. Indeed, both physicians indicated that Stock had no significant medical problems when he entered Immanuel.

Dr. Rizzo testified that from a psychologist's point of view, as opposed to a physician's view, St. Gabriel's was an inappropriate place for Stock to receive treatment. In Dr. Rizzo's opinion, Stock needed to be treated in a program like the one at Immanuel. Teresa Rohren, who was the director of Immanuel when Stock was treated there, testified that Stock "warranted inpatient treatment" at Immanuel. Neither Dr. Rizzo nor Ms. Rohren is a medical doctor, however, and thus their testimony, when viewed in the light of the other evidence, did not compel a finding that it was medically necessary for Stock to receive hospital inpatient services.

## B. Plan-wide Claims

■ Stock also argues that the district court erred in not granting his request for remedial relief on behalf of past, current, and future Share members. As explained earlier, under its protocols UBS typically will not place a member in a hospital inpatient program for therapy and rehabilitation. Instead, Share places its members in outpatient therapeutic programs.

In light of this practice, Stock contends that the initial Certificate misrepresented, and the revised Certificate misrepresents, that Share provides hospital inpatient therapeutic services for alcohol and chemical dependency. He therefore requests (1) that all those who have participated in Share since UBS began managing its chemical-dependency program on November 1, 1986, receive a refund for the portion of their premiums that Share has paid to UBS; (2) that such participants receive notice explaining Share's misrepresentations and the refund; and (3) that the Certificate and Share's marketing materials be amended to expressly state that Share provides hospital inpatient services only for detoxification and medical stabilization, and not for therapy and rehabilitation.

The district court found that Stock lacked standing to bring a cause of action on behalf of other Share members because he was not a member of Share when he filed the suit or

at the time of trial. The court further found that Stock had not presented any evidence entitling him to declaratory or injunctive relief.

Assuming that Stock has standing to raise these claims and that his requested remedies are available under section 1132(a)(3) of ERISA, we find his argument unpersuasive. Share has not misrepresented that it provides therapeutic inpatient services in a hospital merely upon demand. In the initial Certificate, Section 10.6, which governed outpatient chemical-dependency services, expressly stated that Share would provide outpatient therapeutic services when deemed medically necessary. On the other hand, Section 11.4, which governed inpatient chemical-dependency services, did not mention therapeutic services; rather, it stated only that Share would provide inpatient services if such services were deemed medically necessary. In short, the initial Certificate indicated that Share would provide outpatient therapeutic services and inpatient services deemed medically necessary. In the revised Certificate, Share agrees to provide the same basic services. Stock has presented no evidence that Share has failed or will fail to provide the promised services when such services have been deemed medically necessary. Accordingly, we deny Stock's request for plan-wide relief.

We have considered Stock's remaining arguments and find them to be without merit. We deny Stock's request for attorney's fees and costs.

The judgment is affirmed.