**Diane M. YARDLEY, John F. Yardley, J. Charles Yardley, J. Daniel Yardley, J. Kevin Yardley, J. Timothy Yardley, Jenni Lynn Yardley and Diane M. Yardley, as personal representative of the Estate of John B. Yardley, Plaintiffs,**

**v.**

**U.S. HEALTHCARE, INC., Defendant.**

**Civil Action No. 93C–09–154–JOH.**

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 20, 1996.
Decided: Sept. 30, 1996.

Barbara J. Gadbois, Borin & McDonald, Wilmington, for plaintiffs.

Mason E. Turner, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendant.

HERLIHY, Judge.

The matter before the Court is defendant U.S. Healthcare, Inc.'s [USH] motion for summary judgment.

### FACTUAL BACKGROUND

The essential facts are not in dispute. John B. Yardley [Mr. Yardley], a Delaware resident, was employed by Mars Electronics [Mars] in West Chester, Pennsylvania. Mars offered healthcare benefits through USH. There is an apparent factual dispute between the parties over whether Mr. Yardley "chose" to be covered by a Pennsylvania healthcare plan or a Delaware healthcare plan. He chose a Delaware doctor as his primary care physician. It is unclear if this choice meant the choice of coverage under a Delaware plan. USH contends he chose the Delaware plan and plaintiffs contend he never chose a *plan* but should be covered by Mars' Pennsylvania plan. The significance of this dispute is discussed momentarily but the Court views it irrelevant to the resolution of the legal issues involved whether this is a Pennsylvania or Delaware plan. For purposes of this motion, the Court will assume that the USH plan was controlled by Pennsylvania law.

Pennsylvania law requires that all group health, sickness or accident policies carry certain benefits. Pa.Stat.Ann. tit. 40, § 908–2 (1992). One specific benefit, and the one which is the hub around which the issues in this case revolve, is that coverage be provided for a minimum of thirty days of inpatient alcohol treatment. Pa.Stat.Ann. tit. 40, § 908–4 (1992). Delaware law has no such provision. USH says that its master coverage contract with Mars provided:

> A member [Mars' employee] is entitled to inpatient care benefits for detoxification, medical treatment and referral services for alcohol or drug abuse or addiction. Prolonged rehabilitation services in a specialized inpatient or residential facility are excluded.[1]

Affidavit of J. Edward Neugelbauer.

Mr. Yardley apparently had a long-standing alcohol problem. On September 16, 1991, he was admitted to the Kirkwood Detoxification Center and left after several hours. On September 17, 1991, he contacted his primary care physician to get a referral for treatment. He was admitted to Mt. Sinai Hospital in Philadelphia on September 20, 1991 for detoxification.

The staff at Mt. Sinai told Mr. Yardley on September 24, 1991 that he should undergo a 28–day, inpatient treatment program. The parties disagree whether USH "refused" to cover the 28–day program or indicated that there was no coverage for it.

Mr. Yardley's wife, Diane Yardley [Mrs. Yardley], had health insurance coverage through her job. It appears that her plan would have covered Mr. Yardley's inpatient program, if she and/or her husband would have obtained a written denial of coverage from USH. A written denial was never sought.

Mr. Yardley did not enter an inpatient program. On September 26, 1991, while intoxicated, he fell in his home and died on September 29, 1991.

1. Whether this coverage satisfies the Pennsylvania law is not before the Court.

Mrs. Yardley and her children [collectively plaintiffs] have brought a multi-count action. They seek compensatory and punitive damages for breach of contract, wrongful death, intentional infliction of emotional distress suffered by Mr. Yardley, intentional infliction of emotional distress suffered by Mrs. Yardley and the children, pain and suffering, unfair claims' practices and misrepresentation.

## PARTIES' CONTENTIONS

USH contends that its coverage plan with Mars is a welfare benefit plan which falls under the provisions of the Federal Employee Retirement Income Security Act [ERISA]. 29 U.S.C.A. § 1101–1145. As such, it argues ERISA "preempts" many state laws and, thus, all of the plaintiffs' state law claims are preempted and cannot be maintained.

In making its current motion, USH notes it does not concede and is not presently pursuing the issue of whether plaintiffs can show proximate cause between any of its acts and Mr. Yardley's fall and death.

In their initial response to USH's motion, plaintiffs disputed whether USH's plan with Mars was a plan covered by the provisions of ERISA. However, they now agree that ERISA does apply to USH's plan.

Plaintiffs argue that ERISA provides that certain state laws pertaining to insurance are preserved under ERISA. Since Pennsylvania's law mandating inpatient coverage is such a law, they contend it is not preempted. Therefore, they can maintain their action. Plaintiffs also contend there are certain genuine issues of material fact present, namely, the issue of Mr. Yardley's alleged choice of a plan which prevent the award of summary judgment.

## APPLICABLE STANDARD

Summary judgment may only be granted where there are no genuine issues of material fact present and the moving party is entitled to judgment as a matter of law. *Wilson v. Joma, Inc.*, Del.Supr., 537 A.2d 187 (1988). All facts must be examined in a light most favorable to the non-moving party. *Schueler*

*v. Martin*, Del.Super., 674 A.2d 882, 885 (1996).

Where there are some disputed facts, summary judgment is still warranted if the undisputed facts and the non-movant's version of any disputed facts entitle the movant to judgment as a matter of law. *Merrill v. Crothall–American, Inc.*, Del.Supr., 606 A.2d 96, 99–100 (1992).

## DISCUSSION

The parties' agreement that USH's coverage plan falls under ERISA moves the initial analysis to whether the Pennsylvania statute mandating inpatient alcohol treatment is preempted by ERISA or saved under an ERISA saving clause.

There are three provisions in ERISA which are implicated in this analysis. Each has its own judicially-attached nickname. The three provisions are:

[*The Preemption Clause:* ] Except as provided in subsection (b) of this section [*the saving clause* ], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.... 29 U.S.C.A. § 1144(a).

[*The Saving Clause:* ] Except as provided in subparagraph (B) [*the deemer clause* ], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities. 29 U.S.C.A. § 1144(b)(2)(A).

[*The Deemer Clause:* ] Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies. 29 U.S.C.A. § 1144(b)(2)(B).

The first issue is whether § 908-4, the mandated inpatient treatment clause, is preempted by ERISA or whether the saving

clause preserves it. "If a state law 'regulates insurance,' as mandated benefit laws do, it is not preempted." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 746, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985).

In *Metropolitan Life,* the Supreme Court had before it a Massachusetts law mandating certain minimum mental health benefits which stated:

> Any blanket or general policy of insurance ... or any policy of accident and sickness insurance ... or any employees' health and welfare fund which provides hospital expense and surgical expense benefits and which is promulgated or renewed to any person or group of persons in this commonwealth ... shall, provide benefits for expense of residents of the commonwealth covered under any such policy or plan, arising from mental or nervous conditions as described in the standard nomenclature of the American Psychiatric Association which are at least equal to the following minimum requirements:

Mass Gen.Laws Ann., Ch. 175 § 47B.

The Supreme Court held first that the ERISA preemption clause covered this law. *Metropolitan Life,* 471 U.S. at 739, 105 S.Ct. at 2389. But is also held that ERISA's saving clause preserved it, *i.e.,* it was not preempted. *Metropolitan Life,* 471 U.S. at 743–44, 105 S.Ct. at 2391.

The bases of the Supreme Court's holdings in *Metropolitan Life* are twofold. First, it found that the Massachusetts law related to an employee benefit plan within the meaning of 29 U.S.C.A. § 1144(a). *Metropolitan Life,* 471 U.S. at 739, 105 S.Ct. at 2389. Next, it examined whether the Massachusetts law regulated insurance. It rejected the argument that § 47B was a health law and not an insurance law. *Metropolitan Life,* 471 U.S. at 741–42, 105 S.Ct. at 2390.

The Court borrowed a three-part analysis from other case law to determine what is the "business of insurance" and whether regulation of *substantive* provisions of insurance contracts come within the saving clause's exemption of laws regulating insurance. The three-part analysis came from decisions involving the McCarran–Ferguson Act, 15 U.S.C.A. § 1011, *et seq.,* and whether a particular practice falls within the "business of insurance", namely:

> *first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry.

*Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391, quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982) [emphasis in original].

Pennsylvania's statutes at issue provide in part:

> All group health or sickness or accident insurance policies providing hospital or medical/surgical coverage and all group subscriber contracts ... shall in addition to other provisions required by this act....

Pa.Stat.Ann. tit. 40, § 908–2 (1992).

> (a) Minimal additional treatment as a covered benefit under this article shall be provided in a facility which meets minimum standards for client-to-staff ratios and staff qualifications which shall be established by the Office of Drug and Alcohol Programs and is appropriately licensed by the Department of Health as an alcoholism or drug addiction treatment program.
>
> \*　　\*　　\*
>
> (c) The treatment under this section shall be covered, as required by this act, for a minimum of *thirty (30) days per year for residential care.* Additional days shall be available as provided in section 605–A(d). Treatment may be subject to a lifetime limit, for any covered individual, of ninety (90) days.

Pa.Stat.Ann. tit. 40, § 908–4 (1992) [emphasis added].

The language used in the Massachusetts and Pennsylvania laws is remarkably similar. Since USH contends Delaware law applies, Delaware having no equivalent requirement, it did not address the issue of whether ERISA's saving clause preserves § 908–4.

Based on the tests and holdings in *Metropolitan Life*, it fits well within the definition of a statute that regulates insurance. Similar laws regulating insurance have been preserved by the saving clause. *Hall v. Pennwalt Group Comprehensive Med. Expense Benefits Plan*, E.D.Pa., 746 F.Supp. 507 (1988) (Pennsylvania statute requiring notice of a policy holder's right to convert from group to individual coverage upon termination of employment is saved); *DePasquale v. Aetna Life Ins. Co.*, E.D.Pa., 743 F.Supp. 364 (1990) (held Pennsylvania statute requiring notice of certain conversion rights was saved).

That being said, however, there can be no doubt that §§ 908–2 and 908–4 meet the explicit and implicit criteria of ERISA and *Metropolitan Life*. These mandated provisions have the effect of spreading the policyholder's risk. The risk of alcohol inpatient treatment is to be shared.

The insertion in every group insurance policy of a provision mandating coverage for alcohol inpatient treatment becomes an integral part of the substantive terms between the insured and the insurer. The third factor is clearly present by the language and impact of the mandated benefit on insurance policies.

Using the "business of insurance" criteria of *Metropolitan Life* and *Pilot Life*, §§ 908–2 and 908–4 are preserved by ERISA's saving clause. Since the ERISA saving clause preserves § 908–4, does the existence of that mandated benefit provide the foundation for any kind of cause of action against the insurer who did not provide the benefit? This question and its answer is of first impression in Delaware. There appears to be scant, if any, precedent anywhere else which provides an answer.

Plaintiffs cite several decisions of Delaware courts in support of their ability to maintain their action, even under ERISA. None are helpful to the plaintiffs. First, in none of the cases was the issue of ERISA preemption discussed.[2] It is not known whether it was raised. Second, in several of the cases, ERISA's concurrent federal/state court jurisdiction over certain kinds of claims was implicated.[3] Plaintiffs have not made those kind of claims here. In addition, none involved preemption.

The United States Supreme Court has held that ERISA's preemption clause prevented an insured from maintaining a common law cause of action for bad faith. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Supreme Court's reasoning was that the Mississippi common law of bad faith, the state where the insured was employed and covered, was not protected by the ERISA saving clause. Such a cause of action is applicable to all contracts, not just insurance, and is a basis for a tort action. The Supreme Court said it is not a law regulating insurance. *Id.* at 50, 107 S.Ct. at 1554.

A number of other opinions make it clear that state law claims are preempted by ERISA. In *Settles v. Golden Rule Ins. Co.*, 10th Cir., 927 F.2d 505 (1991), the court held the preemption clause knocked out a wrongful death claim where the allegation was the deceased had suffered a heart attack as a result of the termination of his health insurance coverage. The court in *Pane v. RCA Corp.*, 3rd Cir., 868 F.2d 631 (1989) held ERISA preempted state law claims for breach of contract, breach of fair dealing and intentional infliction of emotional distress. Similarly, in *Kelley v. Sears, Roebuck and Co.*, 10th Cir., 882 F.2d 453 (1989) the court held ERISA preempted a common law bad faith action against the insurer. Accord *First Nat'l. Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.*, 11th Cir., 960 F.2d 1546 (1992); *Straub v. Western Union Tel. Co.*, 10th Cir., 851 F.2d 1262 (1988); *Johnson v. District 2 Marine Eng. Beneficial Ass'n.*, 9th Cir., 857 F.2d 514 (1988); *Stock v. Share*, 8th

**2.** *Pobst v. Nanticoke Memorial Hosp.*, Del.Super., C.A. No. 90C–JA–25, Lee, J., 1991 WL 166073 (July 30, 1991); *Morgan v. Hartford Life Ins. Co.*, Del.Super., C.A. No. 83C–JN–97, Taylor, J., 1988 WL 25388 (March 3, 1988).

**3.** *Turner v. Diamond Shamrock Chemicals Co.*, Del.Super., C.A. No. 85C–DE–130, Duffy, J., 1987 WL 11441 (May 27, 1987); *New England Mut. Life Ins. Co. v. Williams*, Del.Ch., C.A. No. 10465, Berger, V.C., 1991 WL 123944, (June 28, 1991).

Cir., 18 F.3d 1419 (1994); *Corcoran v. United HealthCare, Inc.,* 5th Cir., 965 F.2d 1321 (1992); *Jass v. Prudential Health Care Plan, Inc.,* 7th Cir., 88 F.3d 1482 (1996).

With these decisions in mind, the next stage of the analysis involves examining the various claims which plaintiffs make. That examination will be of those claims made on Mr. Yardley's behalf and those made on behalf of Mrs. Yardley and the children.

■ As to Mr. Yardley's claims, the Delaware Wrongful Death statute preconditions the right to recover on the decedent's ability to have maintained an action and recover damages. *Drake v. St. Francis Hosp.,* Del. Supr., 560 A.2d 1059, 1062 (1989); 10 *Del.C.* § 3721(4).

■ Count I of plaintiffs' complaint alleges breach of contract for refusal to pay the inpatient treatment costs. Could Mr. Yardley have maintained this action if he had survived? [4]

ERISA provides enforcement remedies for plan participants.

A civil action may be brought—

 (1) by a participant or beneficiary—

 (A) for the relief provided for in subsection (c) of this section, or

 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C.A. § 1132. These remedies have been recognized. *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825,

108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Stock v. Share,* 8th Cir., 18 F.3d 1419 (1994). They have been declared to be exclusive. *Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556.

■ While a plan participant has the ERISA remedy to recover benefits due, a common law breach of contract action is preempted. *Pilot Life,* 481 U.S. at 57, 107 S.Ct. at 1558. *Settles,* 927 F.2d 505.

In addition, Mr. Yardley never had the treatment and never incurred the cost of treatment. Restitution in a wrongful death setting is not provided under ERISA. *Garner v. Capital Blue Cross,* M.D.Pa., 859 F.Supp. 145 (1994).

■ Plaintiffs' breach of contract action also seeks punitive damages for the alleged breach. While ERISA provides for an action for breach of fiduciary duties—not sought here—it does not allow for an award of punitive damages. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

In none of these cases, however, was there a mandated provision such as § 908–4. Even though Mr. Yardley had certain enforcement remedies potentially available to him when alive because of § 908–4, it cannot be the springboard for a breach of contract claim in these circumstances.

At first blush, *DePasquale* and *Hall* appear to provide support for plaintiffs' cause of action. In each, it was held that if violated, a Pennsylvania statute requiring notice of rights to convert from group to individual coverage allowed for a private cause of action under ERISA. In *Hall,* the court held an individual could seek recovery of medical expenses incurred under ERISA and Pennsylvania's law. It relied upon state court decisions holding that the law allows for private causes of action. The same statute was considered and the same result reached in *DePasquale* when a plan participant sued to recover medical expenses actually incurred.

While there is some potential inconsistency between these cases and *Pilot Life,* as long

---

4. At this stage, the Court is not considering USH's allegation that the costs could have been covered by Mrs. Yardley's insurance, if she and/or her husband had first obtained USH's denial of coverage.

as the action was for expenses incurred, the apparent inconsistency disappears. As here, if Mr. Yardley had sued for expenses *incurred,* he might have had an ability to recover those expenses under ERISA. But that is not the case and that is why the result in *Hall* and *DePasquale,* if properly framed, is consistent with ERISA and *Pilot Life.*

In *Denette v. Life of Indiana Ins. Co.,* D.Colo., 693 F.Supp. 959 (1988), the court had before it a Colorado statute which read in pertinent part:

> No policy of group sickness and accident insurance shall be delivered or issued for delivery in this state unless it contains in substance the following provisions or provisions which, in the opinion of the commissioner, are more favorable to the persons insured or at least as favorable to the persons insured and more favorable to the · policyholder:
>
> \* \* \*
>
> (V) A provision specifying the additional exclusions or limitations, if any, applicable under the policy with respect to a disease or physical condition of a person.... Any such exclusion or limitation may only apply to a disease or physical condition for which medical advice or treatment was received by the person during the twelve months prior to the effective date of his coverage.

Colo.Rev.Stat. § 10–8–116(2)(a).

The plaintiff, who had incurred treatments expenses, brought a multi-count complaint against the insurer because it had denied coverage to her based on its position that she had a pre-existing disease. Count one of her complaint sought declaratory relief that the insurer's pre-existing condition policy clause violated the above statute. Count III alleged outrageous conduct and breach of the covenant of good faith and fair dealing based on two Colorado statutes, the one just-cited and a separate law requiring fair dealing.

The *Denette* court found § 10–8–116(2)(a) to be saved under ERISA. What is not clear from the opinion is whether the plaintiff could recover under the saved statute for *damages* beyond the *cost* of treatment she had incurred. Based on *Mackey* and *Pilot Life,* such extracontractual damage actions are preempted and not saved. *Davis v. John Alden Life Ins. Co.,* D.Kan., 746 F.Supp. 44 (1990) (dismissing all but breach of contract action for treatment expenses incurred).

ERISA provides certain enforcement remedies for plan participants. Suits for recovery of expenses incurred, where appropriate, have been allowed. *See, e.g., Denette.* However, Count I is not a claim for expenses incurred and is a common law claim for alleged breach of contract. Such a cause of action is not saved by ERISA.

■ Count II is a claim for wrongful death. It alleges that USH's willful, wanton, grossly negligent, etc., conduct resulted in Mr. Yardley's death. This claim is enabled by statute. Delaware's wrongful death statute covers a myriad of circumstances not just the business of insurance. At best, it may meet the first criteria of such business, *supra* at 983, but even that is very doubtful. The wrongful death statute certainly cannot meet the remaining two criteria.

More importantly, if Mr. Yardley had lived and filed this action himself, he could not have maintained it because of ERISA. *Settles,* 927 F.2d 505; *Spain v. Aetna Life Ins. Co.,* 9th Cir., 11 F.3d 129 (1993) (wrongful death action for withdrawal of authorization to treat for cancer preempted by ERISA).

Does the preservation of Pennsylvania's mandated inpatient treatment statute change this result and form the basis for this wrongful death action? *Pilot Life* authorizes under § 1132(a) certain limited remedies to force an insurer to put the mandate in its policy. But the door is· opened only so far as *Pilot Life* and the overwhelming number of cases make it clear that a state law claim for damages is not preserved.

Therefore, even though § 908–4 is preserved as an entitlement to be put to all applicable insurance policies even covered by ERISA, it does not form the basis for a state law claim because of ERISA.

■ Count III of plaintiffs' complaint seeks compensatory and punitive damages for the intentional infliction of emotional distress on Mr. Yardley. Again, Mr. Yardley could not have brought this action while alive

so the derivative action under Delaware's wrongful death laws is preempted and not saved. *Settles,* 927 F.2d at 509.

■ Count V seeks compensatory and punitive damages for Mr. Yardley's pain and suffering during his lifetime resulting from USH's actions. This is clearly a common-law based claim and is preempted by ERISA. *Johnson,* 857 F.2d 514; *Garner,* 859 F.Supp. at 148. In the Court's view, the mandate of § 908–4 does not compel a different conclusion.

■ Plaintiffs in Count VII ask for compensatory and punitive damages claiming USH's misrepresentation to Mr. Yardley and Mars. The alleged misrepresentation is that USH did not tell Mars and Mr. Yardley about the choice of the "Delaware Plan" versus the "Pennsylvania Plan". The difference in the two "plans" is the presence of the Pennsylvania statutory mandate for inpatient treatment coverage. For the same reasons plaintiffs' other counts are preempted, Count VII is preempted by ERISA. *Straub,* 851 F.2d 1262; *Lee v. E.I. DuPont deNemours & Co.,* 5th Cir., 894 F.2d 755 (1990).

The remaining counts in plaintiffs' complaint do not involve claims on Mr. Yardley's behalf. They are for Mrs. Yardley and the children. Count II seeks those damages allowable under Delaware's Wrongful Death Act, specifically § 3724(d)[5] for surviving family members. Count IV asks for compensatory and punitive damages for alleged intentional past, present and future extreme emotional distress on Mrs. Yardley and the Yardley children.

These wrongful death claims are preempted by ERISA. *Spain,* 11 F.3d 129; *Corcoran,* 965 F.2d 1321. The wrongful death statute does not qualify as law regulating insurance using the tests enunciated in *Pilot Life* and *Metropolitan Life.* Further, even though the Pennsylvania mandated benefit law is saved by ERISA's saving clause, that does not convert into a savings of this kind of action.

In Count VI of their complaint, plaintiffs here seek compensatory and punitive damages for alleged unfair claim settlement practices. The basis of this claim is an alleged violation of 18 *Del.C.* § 2304(16). That section states:

(16) *Unfair claim settlement practices.*—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b. Failing to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

---

**5.** (d) In fixing the amount of damages to be awarded under this subchapter, the court or jury shall consider all the facts and circumstances and from them fix the award at such sum as will fairly compensation for the injury resulting from the death. In determining the amount of the award the court or jury may consider the following:

(1) Deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries that would have resulted from the continued life of the deceased;

(2) Loss of contributions for support;

(3) Loss of parental, marital and household services, including the reasonable cost of providing for the care of minor children;

(4) Reasonable funeral expenses not to exceed $2,000;

(5) Mental anguish resulting from such death to the surviving spouse and next of kin of such deceased person. However, when mental anguish is claimed as a measure of damages under this subchapter, such mental anguish will be applicable only to the surviving spouse, children, father and mother, (if there is no surviving spouse or children) or person standing in loco parentis to the deceased and persons to whom the deceased stood in loco parentis at the time of the injury which caused the death of the deceased.

10 *Del.C.* § 3724(d).

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

i. Attempting to settle claims on the basis of an application which was altered without notice to or knowledge or consent of the insured;

j. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which the payments are being made;

k. Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

l. Delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

m. Failing to promptly settle claims, where liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

In *Kelley v. Sears, Roebuck and Co.*, 882 F.2d 453, the court examined a claim made on the basis of a Colorado statute prohibiting unfair or deceptive practices in the insurance industry. The Colorado statute is very similar to the Delaware statute plaintiffs cite in Count VI of the complaint. The Tenth Circuit held the statute to be preempted by ERISA and not saved. *Id.* at 455.

The basis of that holding is found in *Pilot Life*. The Supreme Court noted that under the preemption clause of 29 U.S.C.A. § 1144(a), state laws relating to employee benefit plans were preempted. *Pilot Life*, 481 U.S. at 47–48, 107 S.Ct. at 1553. The saving clause, 29 U.S.C.A. § 1144(b)(2)(A) preserved state laws regulating insurance.

*Pilot Life* reiterated the same three tests of business of insurance as were used in *Metropolitan Life*. Using these criteria, the court in *Kelley* found that the Colorado statute did not spread policyholder risk. It also held that the statute did not control the *substantive* provision of the contract itself. *Kelley*, 882 F.2d at 456; accord *Davis*, 746 F.Supp. 44 (holding a similar Kansas act was preempted); *Denette*, 693 F.Supp. 959 (interpreting the same statute as the *Kelley* court did).

More importantly, this Court has held that 18 *Del.C.* § 2301, *et seq.*, specifically § 2304(16) does not provide for a private cause of action. *Moses v. State Farm Fire and Cas. Ins. Co.*, Del.Super., C.A. No. 90C–10–020, Lee, J., 1991 WL 269886 (November 20, 1991); *National Union v. Rhone–Poulenc*, Del.Super., C.A. No. 87C–SE–11, Chandler, V.C. (August 17, 1992) citing *Farlow v. Union Cent. Life Ins. Co.*, 11th Cir., 874 F.2d 791 (1989); *Playtex FP, Inc. v. Columbia Cas. Co.*, Del.Super., C.A. No. 88C–MR–233, Del Pesco, J., 1993 WL 54504 (February 19, 1993); *Strollo v. DeRosa*, Del.Super., C.A. No. 95C–11–189, Del Pesco, J., 1996 WL 527327 (August 29, 1996).

 Therefore, plaintiffs' cause of action under 18 *Del.C.* § 2304(16) is barred on two grounds. First, there is no private cause of action under Delaware law. Second, their action is preempted by ERISA. As noted in *Metropolitan Life*, the particular statutory

provision must regulate the *substantive* provisions of the policy. It is very debatable whether the conversion notice requirement, such as the Pennsylvania law discussed in *Hall* and *DePasquale* meets any or all three of the business of insurance criteria. Also, the courts in *DePasquale* and *Hall* recognized that the conversion provision had been interpreted by state courts to allow a private cause of action. There is no equivalent authority saying § 908–4 creates grounds for a private cause of action, let alone the types of action plaintiffs have brought here. Plaintiffs' Count VI alleging a violation of 18 *Del.C.* § 2304(16) is preempted and cannot be maintained under Delaware law and must be dismissed.

ERISA's saving of § 908–4 provides the mechanism for enforcement within the confines of ERISA's remedy provisions, 29 U.S.C.A. § 1132(a). To hold otherwise would undermine the expansive language and purpose of the preemption clause, as well as numerous court decisions interpreting the exclusive nature of the enforcement scheme of § 1132(a). *Pilot Life*, 481 U.S. at 45–46, 54, 107 S.Ct. at 1552, 1556.

> [The] sweeping pre-emption of state law is consistent with Congress's decision to create a comprehensive, uniform federal scheme for the regulation of employee benefit plans.

*Corcoran*, 965 F.2d at 1329.

This case presents in clear terms the essence of that statement. Pennsylvania's mandated treatment law found in § 908–4 is preserved. Delaware, as noted, has no such equivalent mandated treatment statute. There would be no uniformity, however, if Mr. Yardley had been covered by the Pennsylvania plan and plaintiffs could maintain their myriad causes of action of § 908–4, but would be unable to maintain any action under the Delaware plan. This lack of uniformity is precisely what ERISA seeks to avoid and what the United States Supreme Court says is to be avoided.

Under *Metropolitan Life*, and the saving clause, insurers know what must be included when there is an appropriate state law regulating insurance. To that extent, a degree of uniformity is lost where some states have such "saved" laws, but others do not. But uniformity returns when it is clear the remedy for preserving or enforcing such laws is narrowly circumscribed as in § 1132(a).

Therefore, it is unnecessary to decide whether Mr. Yardley was covered by a Pennsylvania Plan or a Delaware Plan. Further, it does not appear plaintiffs, assuming they could, are seeking the limited remedy available to them under ERISA. There is no factual issue preventing the award of summary judgment to USH.

## CONCLUSION

For the reasons stated herein, U.S. Healthcare, Inc.'s motion for summary judgment is **GRANTED**.